CRAIG S. BELSON *vs.* THAYER & ASSOCIATES, INC., & another.[1]

No. 91-P-37.

Middlesex. February 10, 1992. - March 20, 1992.

Present: ARMSTRONG, FINE, & IRELAND, JJ.

*Condominiums*, Management, Common area, Common expenses.

The decision of the Supreme Judicial Court in *Tosney* v. *Chelmsford Village Condominium Assn.*, 397 Mass. 683 (1986), as read by this court, permitted a condominium association and the project's developer to enter into an agreement for an apportionment of upkeep costs of limited common areas and facilities unconstrained by the formula set out in G. L. c. 183A, § 6(*a*), and, furthermore, the cost of repair of a roof outside a penthouse unit was properly assessed to the unit's owner based on language in the master deed and association by-laws dealing with special rights that the owners of penthouse units have in the roof areas adjacent to those units, where the portion of the roof in which the unit owner had exclusive rights of use was a limited common area as that term is used in the *Tosney* decision, where the arrangement in the by-laws for apportionment of upkeep costs was recorded with the master deed and was made known to the unit owner when he purchased his unit, and where it was also made known to the buyers of other units in the complex who may have relied upon it. [258-260]

Language in the by-laws of a condominium association apportioned the cost of repair of a roof and its overlying deck outside a penthouse unit in a reasonably equitable manner when interpreted so as to oblige the owner of the penthouse unit to bear, as a special assessment, the full cost of any repairs to the patio deck itself and a portion of the cost of repairing the roof equal to the proportion that his fifteen by thirty foot area of the roof designated as "exclusive right and easement" bore to the area of the whole roof (i.e., sixty-one percent). [260-262]

---

[1]Wateridge Condominium Assn., an unincorporated association of the unit owners of Wateridge Condominium in Watertown. As a general rule, unincorporated associations lack the capacity to sue and be sued, see *Save the Bay, Inc.* v. *Department of Pub. Utils.*, 366 Mass. 667, 675 (1975), but G. L. c. 183A, § 10(*b*)(4), creates an exception for condominium associations.

CIVIL ACTION commenced in the Land Court Department on October 31, 1989.

The case was heard by *Marilyn M. Sullivan*, J., on a motion for summary judgment.

*Kenneth R. Berman* for the defendants.

*Charles G. Rancourt* for the plaintiff.

ARMSTRONG, J. The plaintiff, owner of a penthouse unit (unit A) in the Wateridge Condominium in Watertown overlooking the Charles River, obtained a judgment declaring that his share of the cost of repair of a roof outside his unit was 2.6423 percent, as he contended, rather than sixty-one percent, as the condominium association contended. The case is before us on the appeal of the condominium association and its managing agent.

The figure for which the plaintiff contends is based on his percentage interest in the common areas and facilities of the condominium, as set out in a schedule attached to and incorporated in the master deed, and on the requirement of G. L. c. 183A, § 6(*a*) (see note 3, *infra*), that common area expenses be apportioned among unit owners in proportion to their percentage interests in the common property. The sixty-one percent figure for which the association contends is based on language in the master deed and association by-laws dealing with special rights that the penthouse units (there are four, designated as units A, B, C, and D) have in the roof areas adjacent to those units. The master deed specifies that "units A, B, C and D have as appurtenant to them the exclusive right to use the patio-deck to which each has direct access . . . . The owners of units A and D shall have the right to extend the patio decks to which each has direct access to include the areas respectively designated 'Deck Area Reserved for Penthouse Unit A' and 'Deck Area Reserved for Penthouse Unit D' on the floor plans filed with this Master Deed. In addition, the owners of units A and D shall have the exclusive right and easement to use, roof over, and enclose the area shown as 15 feet wide and designated 'Reserved for Penthouse Unit A' and 'Reserved for Penthouse

Unit D' on said floor plans."[2] The association by-laws, which were recorded with the master deed, state (in art. V, § 11) that, "[w]ith respect to units A, B, C and D, all repairs and maintenance of a patio-deck or common area to which said unit has the exclusive right and easement shall be the responsibility of the owner of the unit which has direct access to such patio-deck." In contrast, the same section of the by-laws provides that repairs to the building's balconies (each unit in the building has a balcony, including the penthouse units), are to be treated as common expenses, despite the fact that each balcony is reserved for the exclusive use of the unit having direct access to it. The plaintiff's exclusive rights, according to the calculation of the condominium manager, extend to sixty-one percent of the roof area to be repaired.

The judge, in a thoughtful decision, concluded that "§ 11 as construed by the [association] violates the provisions of G. L. c. 183A, § 6(*a*), which requires in general that common expenses be charged to the unit owners according to their respective percentages of the undivided interest[s] in the common area and facilities."[3] The judge distinguished on its facts *Tosney* v. *Chelmsford Village Condominium Assn.*, 397 Mass. 683 (1986), a decision that upheld special assessments for facilities which, although common, were of value

---

[2]The four penthouse units together comprise the fifth floor of the building which is smaller in area than the floors underneath. Units A and D are mirror images of each other, located at opposite ends of the fifth floor and having roof rights respectively in the two end roofs. Units B and C have similar rights in two central roof areas (whether at the fourth floor roof level or the fifth floor roof level is unclear), but their designated areas are smaller than those of units A and D, and their rights therein are subject to keeping open emergency egress routes to their respective roof areas.

[3]General Laws c. 183A, § 6(*a*), as inserted by St. 1963, c. 493, § 1, states: "The common profits shall be distributed among, and the common expenses shall be charged to, the unit owners according to their respective percentages of the undivided interest in the common areas and facilities." Chapter 183A provides for an exception to § 6(*a*), but it applies only where the "condominium does not contain any unit which is designed for occupancy by only one family or household, or if the floor area [of the one-family units] does not in the aggregate exceed ten percent of the floor area of all units in the condominium." G. L. c. 183A, § 21(*a*)(1), as inserted by St. 1972, c. 709, § 3.

only to a limited number of unit owners. The judge pointed out that the *Tosney* decision concerned a phased condominium development in which one of the buildings in a later phase had very different and markedly superior amenities from those of the original building.[4] The situation in the present case, the judge implied, was not parallel to that in *Tosney*; while the owners of the penthouse units derived special benefit from the areas of roof reserved for their exclusive (or, in the case of units B and C, nearly exclusive) use, all unit owners derived benefit from the roofs — those associated with their principal and indispensable sheltering function.

The judge's position has merit, but we do not think that the *Tosney* decision can be confined so narrowly to its particular facts. The decision builds on language in *Barclay* v. *DeVeau*, 384 Mass. 676, 682 (1981), which describes G. L. c. 183A as "essentially [an] enabling statute[ ]," one which "provides planning flexibility to developers and unit owners," and one under which they "may validly contract as to the details of management . . . [u]nless expressly prohibited by clear legislative mandate." The *Tosney* decision did not read § 6(*a*) as a clear legislative mandate precluding contractual arrangements for a variant apportionment of costs of repairing or maintaining limited common areas. ("Limited common areas" are common areas available for the use of fewer than all unit owners. *Tosney* v. *Chelmsford Village Condominium Assn.*, 397 Mass. at 687.) The focus of the *Tosney* decision, as we read it, is essentially contractual in nature. The decision emphasized that the new unit owners had "received a copy of the agreement that had been entered into between the developer and the association," that the agreement had been "recorded with the master deed," and that "an amendment to the master deed referred to 'all other doc-

---

[4]The *Tosney* decision said of the common facilities benefiting only the unit owners in the later building that, since they "are used solely by the plaintiffs and others occupying the garden-style [i.e., the later] apartments, . . . [i]t does not seem either equitable or logical that townhouse unit owners [i.e., the earlier building] should be required to pay a portion of the expenses for facilities from which they receive no benefit." 397 Mass. at 687.

uments.' " 397 Mass. at 687-688. "Therefore, the [new unit owner] took title to the unit with ample notice that they would be assessed [special] fees for common areas used only by the [new unit] owners." *Id.* at 688. The *Tosney* decision has been characterized as standing for the proposition "that common areas may exist which, in fact, are used by only some of the unit owners, and that an association may assess maintenance fees to only those owners who use these areas." *Kaplan* v. *Boudreaux*, 410 Mass. 435, 443 n.7 (1991).

· There is no need in this case to speculate whether the freedom to deviate by contract from the apportionment of common area upkeep expenses set out in § 6(*a*) will be extended beyond limited common areas. The portion of the roof in which the plaintiff has exclusive rights of use is a limited common area as that term is used in the *Tosney* decision.[5] The arrangement in the by-laws for apportionment of upkeep costs was recorded with the master deed and was made known to the plaintiff when he purchased his unit. (No contention is made to the contrary.) It was also made known to the buyers of other units in the complex who may have relied upon it. In these circumstances, the *Tosney* decision, as we read it, permits the parties to contract for an apportionment of upkeep costs of limited common areas and facilities unconstrained by the formula of § 6(*a*).

Because of this conclusion, we must consider a question that the trial judge did not have to reach on her theory of the case: namely, how the master deed and the by-laws have apportioned the cost of repair of the roof in question. The association contends that they require the plaintiff to assume a portion of the cost equal to the portion of the roof that is

---

[5]This is true in the sense that the rights to use the roof as a living area are exclusive to the plaintiff's unit. The *Tosney* rationale makes it possible to argue that it is true in a second sense: the particular roof, one of several covering the Wateridge Condominium, covers thirteen units (the plaintiff's unit not being one of the thirteen) and thus is utilized by only fourteen of the fifty-nine units comprising the condominium. We do not know if the *Tosney* court would have permitted the roof of the new building to be treated as a limited common area (in the sense that it, like its elevators, central heating and air conditioning, and underground parking, would be of use only to the unit owners in the new building).

subject to his exclusive deck rights (i.e., sixty-one percent), whether or not he has exercised his right to extend the original deck. The plaintiff takes the position that his obligation under the by-laws is to bear the cost of repairing the overlying deck but not the underlying roof. Alternatively, he argues for a smaller portion of the roof repair cost, as explained below.

The critical language is that of art. V, § 11, of the by-laws: "With respect to units A, B, C and D, all repairs and maintenance of a patio-deck or common area to which said unit has *the exclusive right and easement* shall be the responsibility of the owner of the unit which has direct access to such patio-deck" (emphasis supplied). We read the emphasized language as a direct reference to the language used in the ninth paragraph of the master deed (which, it will be recalled, was filed contemporaneously with the by-laws): "In addition, the owners of units A and D shall have *the exclusive right and easement* to use, roof over, and enclose the area shown as 15 feet wide and designated 'Reserved for Penthouse Unit A' and 'Reserved for Penthouse Unit D' on said floor plans." The area so designated for unit A is thirty feet in length, running from the patio-deck that is located at the junction of the rear (river side) wall of the condominium and the plaintiff's unit, down the full length of plaintiff's unit to the front (street side) wall of the condominium. Neither the patio deck area nor the roof area along the river side of the roof over which the plaintiff may extend his patio deck (although he may not roof it over or enclose it) is described as an "exclusive right and easement."[6] The over-all result of this interpretation is that the plaintiff is obliged to bear, as a special assessment, the full cost of any repairs to the patio deck itself and a portion of the cost of repairing the roof equal to the proportion that his fifteen by thirty foot area of roof designated as "exclusive right and easement" bears to

---

[6]We do not reach the argument advanced by the association that the rights the plaintiff has in those two areas amount in legal effect to an easement, as opposed to a license.

the area of the whole roof.[7] As so interpreted, the by-laws apportion the cost of repair in a reasonably equitable manner, treating as the plaintiff's responsibility that portion of the roof that he may enclose and make, in effect, a part of his unit, but absolving him from bearing a disproportionate share of repairs to the remainder of the roof in which his rights of use are distinctly less pervasive.

The judgment is vacated, and a new judgment is to be entered declaring the rights of the parties accordingly.

*So ordered.*

---

[7]The area in which the plaintiff has an exclusive right and interest is 450 square feet. The total roof area is 2,625 square feet. The plaintiff must cover 17.1714 percent of the expense of roof repairs as a special assessment (the plaintiff's different calculation appears to be based on arithmetic error) and 2.6423 percent of the balance as his normal assessment for common area expenses.