MARCIA PODELL & others[1] *vs.* DANIEL LAHN & others.[2]

No. 94-P-407.

Suffolk. January 12, 1995. - July 6, 1995.

Present: PERRETTA, SMITH, & GREENBERG, JJ.

*Condominiums*, Common area, Master deed. *Real Property*, Condominium, Ownership.

Plaintiffs who filed a complaint in the Land Court seeking an order that condominium trustees recalculate the plaintiffs' percentage interests in the condominium did not demonstrate that the weighted percentage interest of their respective units was not in approximate relation to the fair value of the other units on the date of the master deed such as would constitute a violation of the provisions of G. L. c. 183A, § 5 (*a*). [690-693]

There was no merit to the contention of plaintiff condominium owners that the condominium trustees improperly included in the calculation of the plaintiffs' percentage interests certain limited common areas, where those areas (swimming pools and surrounding areas) were for the exclusive use of the plaintiffs and conferred value on their respective units. [693-694]

Plaintiffs who took title to their condominium units with notice of their sole responsibility for maintenance of swimming pools and surrounding areas were properly so assessed by the association for those expenses under the terms of the master deed and under the authority of G. L. c. 183A. [694]

CIVIL ACTION commenced in the Land Court Department on October 15, 1990.

The case was heard by *Robert V. Cauchon*, J.

*Seth Emmer* for the plaintiffs.

*Jonathan W. Fitch* for the defendants.

---

[1]Julian Podell, co-owner together with Marcia Podell of unit 1A of the condominium and Carol Meyer, owner of unit 1B of the condominium.

[2]M. Jesse Lehman, Robert Phillips, Robert C. Lesser and Norman M. Michaels, as trustees of the White Pines Condominium Trust, and the remaining unit owners of the White Pines Condominium and their respective mortgagees.

GREENBERG, J. White Pines at Stockbridge (condominium) is a condominium established under G. L. c. 183A, § 2, composed of sixty-eight units. As to the pertinent facts there is no dispute. The master deed authorized construction of up to eighteen phases.[3] See G. L. c. 183A, § 8. From 1984 to 1988, the development took shape. The condominium was composed of separate buildings of different sizes, locations and architectural styles. The plaintiffs are the owners of the only units contained in the final "Overbrook" phase. When the Overbrook phase was incorporated into the condominium, the undivided interests of the owners of units in the Overbrook phase in the common areas (see G. L. c. 183A, § 5[*a*]) were computed and assigned by the developer of the condominium, White Pines Associates. Those interests, expressed in percentages as the statute requires, were stated in the ninth amendment to the master deed. The plaintiff Podells' unit (1A) was set at 3.6196% and the plaintiff Meyer's unit (1B) at 2.2613%. The plaintiffs' interests, highest of all the units in the development, were established by the use of a weighted square foot formula.[4]

Aggrieved by the designation of these percentage interests, the plaintiffs brought a complaint in the Land Court seeking an order that the trustees recalculate the percentage interests in the condominium. The plaintiffs contended that the

---

[3]Phasing of a condominium permits a developer to expand the size and scope of a condominium project in response to market conditions. In a phased condominium development, groups or stages of units are completed over a period of several years and become part of the condominium by successive amendments to the master deed. "Phasing" is not a statutory term, but is a usage that has grown out of the general enabling provisions of G. L. c. 183A. Cf. *Barclay* v. *DeVeau,* 384 Mass. 676, 682 (1981).

[4]To calculate in percentage terms the approximate relation that the fair value of the unit on the date of the master deed bears to the then aggregate fair value of all the units, the total finished square footage for each unit was multiplied by one, the total unfinished square footage was multiplied by one-half, and exclusive pool areas (which only the Overbrook units enjoyed) were multiplied by one-quarter. The three figures were added together to produce the weighted number for that unit. The number, so determined, was divided by the aggregate numbers (determined through the same process) of all sixty-eight units, to obtain the percentage interest assignable to the unit in question.

weighted square footage formula violated G. L. c. 183A, § 5(*a*). By a second amended complaint the plaintiffs also contested the trustees' assessment of expenses for the swimming pool areas adjacent to their units. A judge of the Land Court made findings of fact and concluded as matter of law that the method used to calculate the percentage interests in the common areas had not violated G. L. c. 183A, § 5(*a*). He also found that the plaintiffs were contractually bound by the terms of their respective deeds to maintain and insure the pool areas assigned to their units.[5] The plaintiffs appeal. We affirm.

1. *Background.* General Laws c. 183A, § 5(*a*), provides that "[e]ach unit owner shall be entitled to an undivided interest in the common areas and facilities in the percentage set forth in the master deed. Such percentage shall be in the *approximate relation that the fair value of the unit on the date of the master deed bears to the then aggregate fair value of all the units*" (emphasis supplied).

To determine the validity of the percentage interests set by the developer for the plaintiffs' units, it is necessary to analyze that part of § 5(*a*) emphasized in the preceding paragraph of this opinion. That language, on its face, does not permit the percentage interest of a unit in the common areas and facilities to be based on any approach other than the relationship of the fair value of the unit to the aggregate fair value of all the units. In that respect, the Massachusetts condominium statute differs from the Uniform Condominium Act model. See and compare Uniform Condominium Act § 2-107 (1980), which permits such allocation to be accomplished on any formula that is reasonable and equitable.

---

[5] The judge found that the eleventh amendment to the master deed, which set out the plaintiffs' exclusive right to use, and duty to maintain, their respective pool areas, was void due to procedural defects, but that if properly re-executed, it would be valid. He also ordered a recalculation of the plaintiff Meyer's percentage interest because of a mathematical error acknowledged by the trustees. The trustees complied with the order by recording a twelfth amendment to the master deed and the plaintiff Meyer does not appeal that aspect of the order.

The approximate relation of the fair value of a unit to the aggregate fair value of all the units often reduces itself to a process of dividing a unit's floor area by the aggregate floor areas of all the units in the condominium.[6] The computation process does not exclude the possibility, however, that in setting the percentage interests, units of the same size but with better locations in the condominium development, may be ascribed a higher "fair value." Units possessed of "facilities which, although common [are] of value only to a limited number of unit owners . . ." may have a higher market value and, therefore, warrant a higher percentage interest in the common areas. See *Belson* v. *Thayer & Assocs., Inc.* 32 Mass. App. Ct. 256, 258-259 (1992). It is also possible, in comparing "fair values" of various units in a phased condominium complex, that units which have amenities superior to those in the original buildings may be assigned a higher percentage interest. For that proposition there is some authority. See *Tosney* v. *Chelmsford Village Condominium Assn.*, 397 Mass. 683, 687 (1986). Parenthetically, the court held in *Kaplan* v. *Boudreau*, 410 Mass. 435, 443 (1991), that "[t]he grant of exclusive use to one unit owner of a common area is sufficient to change the relative interest of the unit owners in that common area."

2. *Validity of the methodology for setting percentage interest.* The plaintiffs argue that the developer failed to adhere to § 5(*a*) because the weighted square foot formula excludes elements which may affect the value of their units. They fail, however, to identify those factors. In fact, the judge found that the plaintiffs offered no evidence of what they consider the fair value of their units to be in comparison to the other units in the complex. A party seeking to alter the status quo to another's disadvantage has the burden of prov-

---

[6]See and compare the Florida Condominium Statute, which provides: "In the declaration of condominium for residential condominiums created after April 1, 1992, the ownership share of the common elements assigned to each residential unit shall be based either upon the total square footage of each residential unit in uniform relationship to the total square footage of each other residential unit in the condominium or on an equal fractional basis." Fla. Stat. § 718.104(f), as amended by Laws 1991, c. 91-103, § 2.

ing all the elements of his claim. *Eliot Discount Corp.* v. *Dame,* 19 Mass. App. Ct. 280, 285 (1985). Furthermore, § 5(*a*) does not prescribe or forbid any particular method of calculation, but rather requires that the percentage interest of each unit in the common areas be approximate to the relationship of that unit's fair value to the other units as of a particular date — for example — the date the original master deed is filed. That was the method used here. It would have been unfair to earlier unit buyers if, at the time that percentage interests were first calculated, their units were assigned a higher "weight" because their units were finished, while other units which were unfinished were assigned a lower "weight."

The judge's findings that the Overbrook units were possessed of markedly superior amenities undercuts the plaintiffs' position with respect to fair market value. The situation in the present case, as the judge implied, is analogous to that in *Tosney* v. *Chelmsford Village Condominium Assn.,* 397 Mass. at 683. Absent a clear showing that the weighted percentage interest of their respective units was not in approximate relation to the fair value of the other units on the date of the master deed, the judge did not abuse his discretion in refusing to reform the plaintiffs' percentage interests.

In *Barclay* v. *Deveau,* 384 Mass. 676, 682 (1981), which describes G. L. c. 183A as "essentially [an] enabling statute[ ]," and one which "provides planning flexibility to developers and unit owners," the court held that the developers did not violate the statute or contravene public policy by retaining control of the condominium association's board of directors until the developer's ownership interest was reduced to a small percentage of the units in the condominium. The dicta of the *Barclay* decision, as we read it, is that where the statute *does not expressly* prohibit a practice or is otherwise silent, the trustees have discretion to implement the contractual arrangements for the management and regulation of proportionate interest in the condominium. *Id.* at 679.

As the defendants point out in their brief, the use of square footage to calculate the fair values of the units is ide-

ally suited to phased condominiums because it equalizes for fluctuations in the market values over time and permits percentage interests to be assigned to units which have not been completed, based on their plans.

3. *Expenses related to the "pool areas."*

The plaintiffs make a two-part argument with respect to the trustees' special treatment of their swimming pools and surrounding areas as limited common areas. First, they contend that the inclusion of those areas in the calculation of their percentage interests ran afoul of § 5(*a*) because common areas should be excluded from the equation. Second, they assert that the association had no authority under G. L. c. 183A to assess a special fee for insurance and maintenance expenses for their pool areas.

There is no merit to either contention. As to the first argument, under the eleventh amendment to the master deed, the condominium association granted the plaintiffs an "exclusive right and easement to use so much of the common area and facilities as is located within the fenced in [pool] areas adjacent to [their] units."

In the *Tosney* case, the court discussed the ramifications of limited common areas. Although the statute is silent on the subject, the *Tosney* opinion established that facilities used solely by certain unit owners to the exclusion of others are permissible under the statute when the master deed authorizes exclusivity. 397 Mass. at 687. The pool areas fall within that definition, and the judge found those amenities confer value on the Overbrook units which justified including the areas in the calculation of their percentage interest. See *Kaplan* v. *Boudreau*, 410 Mass. at 443.

The plaintiffs argue that this aspect of their case is governed by *Strauss* v. *Oyster River Condominium Trust*, 417 Mass. 442 (1994). The plaintiffs are mistaken. In *Strauss*, condominium unit owners with approval of a majority of the trustees, constructed additions to their respective units which encroached on the common areas in violation of G. L. c. 183A. When other members of the owner's association sought to enjoin the encroachment, the court held that the

owners were justified because the additions were built in good faith reliance on the master deed, which required merely a majority of the trustees to authorize construction. The court did not hold that "fair value" may not include limited common areas. To remedy the situation, the *Strauss* court ordered a recalculation of the percentage interests of the improved units to reflect the "as built" condition of the condominium. Id. at 448.

Here, the judge properly exercised his discretion in refusing to order a recalculation because the amounts set in the plaintiffs' master deed, in fact, reflected the "as built" circumstances.[7]

The plaintiffs' last contention is that the judge improperly ruled that the appellants are "contractually obligated by the provisions of [their respective] deeds to maintain, repair and insure their respective pool areas." We recently approved a similar treatment of one exclusive area (patio-deck) in *Belson* v. *Thayer & Assocs., Inc.*, 32 Mass. App. Ct. at 257-260. The "singling out" of these units as the only ones to bear the expenses of limited common areas is fully supported by the *Tosney* case, as well. In this case, the plaintiffs took title with notice that they had the sole responsibility for the expenses associated with the pools. Under the twelfth amendment to the master deed filed shortly after the entry of the judge's order, the trustees substantially complied with the requirements of G. L. c. 183A.

The judgment for the defendants on the issue of the validity of the assignment of percentage interests in the common

---

[7] The "as built" plan requirement of c. 183A is an essential element of the creation of a condominium in Massachusetts. The commonly used phrase "as built" plans is derived from the language of G. L. c. 183A, § 8, which provides that the master deed "shall contain the following particulars:"

"(f) A set of the floor plans of the building or buildings, showing the layout, location, unit numbers and dimensions of the units, stating the name of the building or that it has not a name, and bearing the verified statement of a registered architect, registered professional engineer, or registered land surveyor, certifying that the plans fully and accurately depict the layout, location, unit number and dimensions of the units *as built*" (emphasis added).

areas and on the order requiring the plaintiffs to pay all expenses for the pool areas is affirmed.

*So ordered.*