NANCY WHALEN VIOLA & others[1] *vs.* MILLBANK II
ASSOCIATES & others.[2]

No. 96-P-210.

Hampshire. January 30, 1997. - December 19, 1997.

Present: ARMSTRONG, GILLERMAN, & LENK, JJ.

*Condominiums,* Master deed, Common area. *Real Property,* Condominium.

The terms of a condominium master deed provided that the amendments to
the master deed required by the building of two additional phases would
not affect the percentage interests in common areas set forth, by phase, in
an exhibit to the master deed, and, as a result, the developers were entitled
to develop the additional phases without the consent of all the unit owners,
as set forth in G. L. c. 183A, § 5(*b*). [85-87] LENK, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on
April 9, 1990.

The case was heard by *John F. Murphy, Jr.,* J., on a motion
for summary judgment, and entry of a final judgment was
ordered by him.

*Donna M. Brown,* Special Assistant Attorney General (*Leland
B. Seabury,* Special Assistant Attorney General, with her) for
the Commonwealth.

*Allan K. Cook* for Valley Community Development Corpora-
tion.

[1]James Viola, David Hampson, R.C. Stevens, and Norbert Reike, Jr.

[2]We need name only those defendants who currently are the real parties in
interest as defendants, namely, Valley Community Development Corporation,
Valley Millbank Limited Partnership, Valley Millbank Corporation as General
Partner of Valley Millbank Limited Partnership, and the Commonwealth of
Massachusetts, assignee of a mortgage granted by Valley Community Develop-
ment Corporation, acting by and through the Executive Office of Communities
and Development. We shall refer to these defendants collectively as the
"developers." Of these defendants, only the Commonwealth of Massachusetts
filed a brief.

We acknowledge the amicus brief filed by the Attorneys' Committee of
Community Associations Institute, New England Chapter.

*Michael Pill* for the plaintiffs.

*Stephen M. Marcus, MaryLou Muirhead & William DeBear,* for Attorneys' Committee of Community Associations Institute, New England Chapter, amicus curiae, submitted a brief.

GILLERMAN, J. The plaintiffs are individual unit owners of the Millbank II Condominium in Northampton, planned by its developers as a so-called "phased" condominium project. The plaintiffs brought this action in 1990. With the passage of years, and several mesne conveyances of the development rights, the present developers, in 1993, intervened in the original lawsuit[3] and filed a counterclaim seeking a declaration that under the terms of the master condominium deed they are entitled to develop phases II and III of the condominium as condominium units. It was not until March, 1994, that the plaintiffs asserted, in answer to the developers' counterclaim, that the developers have no right to develop phases II and III as condominium units without the consent of all phase I unit owners, as required by G. L. c. 183A, § 5(*b*).[4]

The judge allowed the plaintiffs' motion for summary judgment on the developers' counterclaims. Final judgment for the plaintiffs was entered declaring that the developers may not construct phases II and III of the condominium without the unanimous consent of the individual unit owners as required by G. L. c. 183, § 5(*b*). The developers appeal from this judgment.

*Background facts; the master deed.*

The initial developer was the declarant of the condominium, creating Millbank II condominium in November, 1988, by recording a master deed in the appropriate registry of deeds. The declarant submitted to the condominium certain parcels of land described in Exhibit 1 to the master deed, as well as, among other things, certain existing buildings and improvements

---

[3]The brief of the Commonwealth of Massachusetts informs us that the suit as originally filed sought a declaratory judgment that the construction of phases II and III of the condominium could be undertaken only as condominium units, and not as a limited equity cooperative. The issue of the legality of the development of phases II and III as condominium units was first raised by plaintiffs' counsel in February, 1993, in a letter to counsel for the developers.

[4]Section 5(*b*), as in effect at all relevant times, provides, in part, that "[t]he percentage of the undivided interest of each unit owner in the common areas and facilities as expressed in the master deed shall not be altered without the consent of all unit owners whose percentage of the undivided interest is affected, expressed in an amended master deed duly recorded."

denominated phase I, consisting of two buildings containing eighteen units.

The first paragraph of the master deed states that it was the declarant's intention, by amendments to the master deed, to develop the condominium in three phases as shown on a plan recorded with the master deed.[5]

Paragraph (5)(B) of the master deed provides that the *"proportionate interest [of each unit owner] in the Common Elements of the Condominium* are set forth in Exhibit 3 and Exhibit 3A annexed hereto and incorporated herein" (emphasis added). Exhibit 3 merely provides a description of each unit. Exhibit 3A is critical to the issue before us; it provides a schedule entitled "Percentage interest in Common Areas and Facilities of Units in Phase 1 *initially and upon the completion of subsequent phases of the Condominium"* (emphasis added). The schedule consists of four columns, the first of which is the unit number, the second of which is captioned "PHASE ONE," the third of which is captioned "PHASE TWO," and the fourth of which is captioned "PHASE THREE." In this fashion Exhibit 3A records and discloses the initial percentage ownership of the common areas, and the decreasing percentage ownership of each unit as phases II and III are introduced. For example, unit 3-1 owns a percentage interest of 6.223 per cent at the completion of phase I, 3.559 per cent at the completion of phase II, and 2.492 per cent at the completion of phase III.

Consistent with the foregoing, paragraph (6), which describes the condominium "common elements," i.e., common areas and facilities, provides, in part, "Each Unit Owner *shall be entitled to an undivided beneficial interest in the Common Elements in the percentages shown on Exhibit #3A . . .* attached to this Master Deed and incorporated herein by reference . . ." (emphasis added).

In paragraph (11), captioned "Amendments," the master deed provides, in part, as follows:

"This Master Deed may be amended by an instrument in writing: (a) signed by one or more Unit Owners entitled to eighty (80%) percent or more of the Beneficial Interest

[5]The master deed states, in part, in the opening paragraph, "It is the intention of Grantor to develop said Condominium in three (3) phases designated as Phase I through Phase III as shown on the plan recorded herewith, by amendment of the Master Deed as set forth herein."

in the Common Elements, (b) signed and acknowledged by a majority of the Trustees of the Condominium Trust, and (c) duly recorded with the Registry of Deeds, PROVIDED, HOWEVER, that:

" . . .

"(C) No instrument of amendment which alters the percentage of the Beneficial Interest *to which any Unit is entitled* in the Common Elements shall be of any force or effect unless the same has been signed by all Unit Owners, and recorded as an Amendment to the Master Deed [emphasis added];

"(D) Notwithstanding paragraphs 11(A) — 11(C), without the consent of any Unit Owners, (a) the Grantor, or its successors or assigns may at any time prior to December 31, 1998 amend this Master Deed so as to create Phase II, which shall consist of a twelve (12) unit building . . . and (b) if said Phase II is so created the Grantor or its successors or assigns may at any time prior to December 31, 1999 amend this Master Deed so as to create Phase III which shall consist of a twelve (12) unit building . . . . [F]rom and after the recording of such amendment or amendments, the Condominium shall include the Units and Common Elements included in Phases II and III as applicable, . . . *but no such amendment or change shall effect [sic] the aggregate percentage interest of any Phase created of record by this Master Deed or on any amendment thereto* [emphasis added]."

*Discussion.*

The judge concluded that the master deed violated § 5(*b*) by failing to require unanimous unit owner consent to the alteration of common area percentages as phases II and III are introduced. The unit owners make the same argument in their brief: "The fatal flaw in the Millbank II master deed is the lack of any provision by which the unit owners are deemed to consent to a reconveyance back to the defendant developer of land which has already become part of the condominium common area."[6]

The plaintiffs misconceive the provisions of the master deed.

---

[6]No party questions the availability of phased developments under G. L. c. 183A, and rightly so. See *Podell* v. *Lahn*, 38 Mass. App. Ct. 688, 689 n.3

By the express terms of paragraph (6) of the master deed, each phase I unit owner "shall be *entitled* to an undivided beneficial interest in the Common Elements in the percentages shown on Exhibit #3A . . . attached to this master deed. . ." (emphasis added). Paragraph 5(B) (captioned "Description of Units") is to the same effect; it provides that each unit's proportionate interest in the common elements of the condominium are set forth in Exhibit 3A. Exhibit 3A sets forth the "[p]ercentage interest in Common Areas and Facilities of Units *in Phase I initially* and upon the completion of subsequent phases of the Condominium" (emphasis added). Paragraph 11(D) makes it clear that amendments to the master deed required by the phasing plan do *not* affect the percentage interest, as created by Exhibit 3A, in the common areas.

The only reasonable construction that may be put upon Exhibit 3A and the related paragraphs (6), 5(B), and 11(D) is that a unit owner's initial entitlement to a percentage ownership in the common elements under the master deed is for phase I *only*; upon the completion of phase II his percentage entitlement is reduced and remains fixed until the completion of phase III, at which point his percentage entitlement is reduced again to a new fixed number which thereafter will remain unchanged, absent unanimous consent of all unit owners to a different schedule of percentage ownerships.

With the master deed so construed, it may be seen that the percentage interest of each unit owner in the common elements, "*as expressed in the master deed* [is] not . . . altered" (emphasis added), G. L. c. 183A, § 5(*b*), by the construction of phases II and III. Each unit owner is informed from the outset that his percentage entitlement to an undivided interest in the common elements varies with each development stage of the condominium; since those variations are all originally "expressed in the master deed" by reason of Exhibit 3A, the construction of phases II and III do not work any forbidden *alteration* in percentage interests as expressed in the master deed in violation of c. 183A, § 5(*b*).

(1996); *Suprenant* v. *First Trade Union Sav. Bank, FSB*, 40 Mass. App. Ct. 637 & n.2 (1996) (plan for phased development assumed valid). See also *Barclay* v. *DeVeau*, 384 Mass. 676, 682 (1981) ("This statute provides planning flexibility to developers and unit owners [citation omitted]. Unless expressly prohibited by clear legislative mandate, unit owners and developers may validly contract as to the details of management").

That being so, the plaintiffs, as individual unit owners, are bound by the provisions in the master deed. See *Johnson* v. *Keith*, 368 Mass. 316, 321 (1975); *Tosney* v. *Chelmsford Village Condominium Assn.*, 397 Mass. 683, 687-688 (1986). *Strauss* v. *Oyster River Condominium Trust*, 417 Mass. 442 (1994), upon which the plaintiffs rely, has no bearing on this case. *Strauss* involved an "unlawful master deed," *id.* at 447; there is no such deed in this case.

The judgment is reversed. The case is remanded to the Superior Court for the entry of a new judgment on the developers' counterclaim declaring the right of the developers to proceed with the construction of phases II and III without the consent of the unit owners of phase I.

*So ordered.*


LENK, J. (dissenting). With this case, we reach the limits of what our "primitive, first generation condominium statute," *Barclay* v. *DeVeau*, 11 Mass. App. Ct. 236, 247 (1981) (Greaney, J., dissenting), can accommodate in master deeds for phased condominiums. Our statute is largely silent on this now commonplace reality and our case law on the subject of phased development also remains remarkably sparse. Other than a handful of treatises and practice guides, real estate practitioners have largely been left to their own devices in their struggle to fit the intricacies of phasing within the confines of G. L. c. 183A. This case illustrates the problem.

The majority conclude that the master deed does not run afoul of § 5(*b*). They reach this conclusion by reading the pertinent master deed language in a way that instead collides head-on with § 5(*a*). I think that the majority read the master deed language incorrectly. In my view, the master deed language, sensibly construed, can comport with § 5(*a*), but nonetheless flies directly in the face of what § 5(*b*), elucidated by recent case law, requires. In either event, the statute is violated.

The majority observe that the master deed does not express each unit owner's percentage interest in common areas as a permanently fixed ratio. Instead, they see the master deed as expressing the unit owner's interest in alternative percentages that are temporary and contingent in nature. In other words, the

master deed on this view does not express fixed entitlements for unit owners in common areas but rather phase-specific alternative percentages of diminishing magnitude. From this, the majority reason that, since what is not fixed cannot be altered, no "alteration" in each unit owner's percentage interest in common areas "as expressed in the master deed" results with the addition of phases. Hence, they conclude, the unanimous unit owner consent requirement of § 5(*b*) which is triggered by attempted alteration of percentage interests "as expressed in the master deed" does not come into play.

The foregoing analysis ignores the over-all structure of § 5, described by the Supreme Judicial Court in *Beaconsfield Towne House Condominium Trust* v. *Zussman,* 401 Mass. 480, 483 (1988), as follows: "[T]he statute contains a comprehensive scheme defining and governing the common areas of a condominium complex. Each unit owner is entitled to a proportional, undivided interest in such areas, G. L. c. 183A, § 5(*a*), and this percentage interest cannot be altered absent the consent of all unit owners, c. 183A, § 5(*b*). Furthermore, c. 183A, § 5(*c*), mandates explicitly that the common area must remain undivided, and that any covenant or provision to the contrary is null and void."

In § 5(*a*), the statute requires the developer to set forth in the master deed the specific percentage interest in the common areas to which each unit owner is entitled. The statute is unequivocal that "[e]ach unit owner shall be entitled to an undivided *interest* in the common areas . . . *in the percentage* set forth in the master deed" (emphasis added). This percentage is to be calculated to reflect "the approximate relation that the fair value of the unit on the date of the master deed bears to the then aggregate fair value of all the units." This portion of the statute contemplates, quite plainly it seems to me, a unit owner entitlement that is fixed and permanent: the entitlement will be expressed in the master deed as a fixed ratio determined as of a fixed date. Nothing in § 5(*a*) or in the remaining portions of § 5 suggests that such a property interest as the unit owner's entitlement may be in any way variable or contingent. Indeed, the use of the singular in both § 5(*a*) and § 5(*b*) expresses the Legislature's intent that the master deed set forth a fixed percentage interest for each unit owner and that "[t]he percentage of the undivided interest . . . as expressed in the master deed shall not be altered without the consent of all unit owners

. . . expressed in an amended master deed duly recorded." G.L. c. 183A, § 5(*b*).

Further, implicit in the majority's analysis is the unsound assumption that the developers could convey to the phase I unit owners something less than a permanent and fixed percentage interest (e.g., unit A is entitled to x% for now but only [x - y]% later if the developers elect to build the second phase) because the developers retained for themselves in some manner a property interest in the common area land on which subsequent phases would be built. The developers here did not retain any such interest, however, and could not create one for the first time in the master deed itself.

At the time the original master deed was recorded, the developers submitted to G. L. c. 183A all of the land on which all phases of the project were to be built. The developers took no steps before recording the master deed to exclude any property interests in such land from the property they submitted to the condominium. Notwithstanding any language to contrary effect in the master deed itself, the developers thus did not retain any property interest in the land on which phases II and III would be built. Compare *Commercial Wharf East Condominium Assn.* v. *Waterfront Parking Corp.,* 407 Mass. 123, 129-134 (1990); *Beaconsfield Towne House Condominium Trust* v. *Zussman,* 416 Mass. 505, 508 (1993). This means that the land upon which the developers propose to build phases II and III is and has been from the condominium's inception common area land in which undivided percentage interests are owned by the phase I unit owners as tenants in common.

A simpler way of looking at the language in the master deed and in the "menu" or schedule of percentage interests contained in Exhibit 3A to the master deed is this. The language expresses the developers' plan of phased development and the specific consequences in store for units in prior phases when subsequent ones are developed. In addition, the master deed, with the menu, set forth the fixed percentage common area interests to be in phase I unit owners as well as the diminution (that is to say, the alteration) which will occur, to a predictably known degree, in such percentage interests upon the development of subsequent phases, the latter to be accomplished by means of amendments to the master deed. The unit deed for each phase I unit conveys a fixed percentage interest in common areas as it existed when the master deed was recorded, i.e., when only phase I had been developed.

There is nothing intrinsically objectionable about the use of a device such as this "menu" of percentage interests nor does it, standing alone, violate § 5(*a*). The problem is that the master deed also contains language that permits amendments to the master deed for the purpose of adding subsequent phases to occur "without the consent of any Unit Owners." Such language would appear to contravene the explicit requirements of § 5(*b*). The master deed, moreover, is devoid of any provision expressly conferring unit owner approval of the contemplated alterations in percentage ownership interest.[1] The issue really before us, I think, is whether § 5(*b*) was satisfied by the phase I unit owners' acceptance of unit deeds subject to the master deed which plainly put them on notice of the planned phasing and of the unit-specific diminutions or alterations in percentage interest which would result. In light of recent case law and amendments to § 5(*b*), I think we are constrained to conclude that such notice to unit owners is not the functional equivalent of the consent required by § 5(*b*).

Being fully mindful that c. 183A is an enabling act which "provides planning flexibility to developers and unit owners," *Barclay* v. *DeVeau*, 384 Mass. 676, 682 (1981), the statute nonetheless sets out minimum requirements for establishing a proper condominium which must be met. *Commercial Wharf East Condominium Assn.* v. *Waterfront Parking Corp.*, 407 Mass. at 128. To be sure, "[m]atters not specifically addressed in the statute should be directed to the parties to be worked out." *Tosney* v. *Chelmsford Village Condominium Assn.*, 397 Mass. 683, 686-687 (1986). However, unlike the "details of administration and management" of a condominium, see *Barclay* v. *DeVeau*, 384 Mass. at 682, or the assessment of "limited common area" charges, see *Tosney* v. *Chelmsford Village*

---

[1]The unit owners suggest that the master deed could have provided for unit owner consent, either expressly or by appointment of the developer as the unit owner's attorney-in-fact (as in paragraph 11[D] where the developers reserve the right to grant utility-type easements, as to which each unit owner by acceptance of a unit deed appoints the developer as her attorney-in-fact for the purpose of executing necessary documentation) or by using a phasing lease, recorded prior to the master deed, to prevent the land needed for phases II and III from becoming part of the phase I common area. See 1 Galvin, Massachusetts Condominium Law Appendix A (MCLE 1988 & 1996 Supp.); Brown, Keenan & MacGregor, Massachusetts Condominium Law §§ 6.02-6.03 (2d ed. 1996); Mendler, Massachusetts Conveyancers' Handbook § 17:2.07 (3d ed. 1984 & 1996 Supp.); Massachusetts Conveyancers Assn., Guide to Registries of Deeds 287-293 (3d ed. 1996).

*Condominium Assn.,* 397 Mass. at 688; *Belson* v. *Thayer & Assocs.,* 32 Mass. App. Ct. 256, 259 (1992), or the particular method of calculating § 5(*a*) percentage interests, see *Podell* v. *Lahn,* 38 Mass. App. Ct. 688, 691 (1995), all matters not specifically addressed in c. 183A, the statute is by no means silent on the subject of the diminution of unit owner percentage interests in common areas. To the contrary, "the statute contains a comprehensive scheme defining and governing the common areas of a condominium complex." *Beaconsfield Towne House Condominium Trust* v. *Zussman,* 401 Mass. at 483. That scheme is contained in § 5, and "[s]ection 5(*b*) provides that the percentage of undivided interest in the common areas held by each unit owner cannot be altered without the consent of all unit owners whose percentage is affected, and that any such alteration can be achieved only by amendment to the master deed." *Kaplan* v. *Boudreaux,* 410 Mass. 435, 438 (1991).

Recent cases have construed strictly the clear and unambiguous unanimity requirement of § 5(*b*). In *Kaplan, supra,* the owner of one of nineteen units in a residential condominium challenged a by-law amendment approved by unit owners holding 77.38 per cent of the voting interest. The amended by-law allowed the owners of unit eleven exclusive use of a walkway providing access from the street solely to their unit and exempted the unit eleven owners from use restrictions otherwise preventing them from landscaping this walkway. The walkway in question was, according to the master deed, part of the common area even though the original by-law had restricted its use to that of ingress and egress to unit eleven. The Supreme Judicial Court concluded that the by-law amendment, by granting one unit owner exclusive use of part of the common area, deprived the other unit owners of all use thereof, and altered the owners' percentage interest in the common areas. Since the amended by-law contravened the unanimous unit owner consent requirement of § 5(*b*), it was deemed invalid.

Three years later in *Strauss* v. *Oyster River Condominium Trust,* 417 Mass. 442 (1994), the court was once again called upon to construe § 5(*b*) and, once again, did so strictly. In *Strauss,* the condominium consisted of nine free-standing dwelling units, plus a boathouse and common area, all located on two and two-thirds acres of land in Chatham. The master deed expressly authorized each unit owner, upon obtaining the written approval of a majority of condominium trustees, to build

out his or her unit onto common area. Each of the unit owners involved in the litigation was aware of the " 'rules of the game' . . . prescribed by the master deed" and purchased believing that each unit owner had such right to expand into the common area. *Id.* at 452. The court nonetheless concluded that "this purported authorization was contrary to the mandate of G. L. c. 183A that any such alteration of the common area must be approved by all the unit owners, expressed in an amended master deed." *Id.* at 443.

In adhering to this strict view of § 5(*b*), *Strauss*, *supra*, gave short shrift to the contentions that limited common areas were created or that the right to expand onto common area was somehow derived from a retained property interest, excluded by the developer from the interest initially subjected to c. 183A, and passed along as a right in the trustees to grant easements over common area. "That is not . . . what the master deed does. . . . Such a construction of the documents would undercut the statutory requirement of unanimous consent to alter the ownership percentages of the undivided interest" in common areas. *Id.* at 446. Lastly, and of most significance to the matter now before us, the court was unmoved by the fact that the unit owners had all acquired their interests with full notice of the master deed provision authorizing subsequent expansion onto common area. That they had "notice of the existence of the unlawful master deed provision does not bind them to accept it. To bind the unit owners in such circumstances would mean that any provision in a master deed would overrule the requirements of the condominium statute. The Legislature could not have intended that result." *Id.* at 447. See *Beaconsfield*, 401 Mass. at 484 & n.13.

Most recently in *Suprenant* v. *First Trade Union Sav. Bank, FSB*, 40 Mass. App. Ct. 637, 641 (1996), on the authority of *Kaplan*, *supra*, and *Strauss*, *supra*, we held invalid an amendment to a master deed, approved by seventy per cent of the unit owners, which purported to extend the then expired time period within which the developer could build additional phases. The amendment was invalid, we concluded, because it contravened the unanimity requirement of § 5(*b*); absent unanimous unit owner consent the reduction in fixed[2] common area percentage interests attendant upon the extended phasing was impermissible.

---

[2]The master deed in *Suprenant* expressly provided that the developer could construct the condominium in phases over a seven-year period and that it

In view of this recent case law suggesting quite strongly and consistently that § 5(*b*) is not among those provisions of c. 183A permitted a flexible interpretation, I conclude that the master deed here is at variance with § 5(*b*). While it is true that here, unlike in *Strauss, supra,* the unit owners knew in advance precisely rather than generally the extent to which their percentage interests would diminish with phasing, this suggested distinction — one of degree and not of kind — does not warrant a different result. The master deed in *Strauss,* as here, permitted percentage ownership interests in common areas to be altered by procedures other than those mandated by § 5(*b*); it is this circumvention which invalidates both efforts.

This conclusion is buttressed by the following observations. The shortcomings of c. 183A are no secret. See, e.g., *Barclay* v. *DeVeau,* 11 Mass. App. Ct. at 247 (Greaney, J., dissenting). The Legislature has from time to time addressed certain of its perceived deficiencies, but has not chosen to do so by enacting legislation such as the Uniform Condominium Act, 7(II) U.L.A. 199 (Master ed. 1997 & 1997 Supp.), or the Uniform Common Interest Ownership Act, 7(I) U.L.A. 47 (Master ed. 1997 &

would do so by recording amendments to the master deed that it alone would sign without need of unit owner consent or signature. Unlike the master deed here, the *Suprenant* master deed also provided as follows:

> "Each Unit Owner understands *and agrees that* as additional phase(s) containing additional Units(s) are added to the Condominium by amendment to this Master Deed pursuant to the Declarant's reserved rights hereunder, the percentage ownership interest of his Unit in the Common Areas and Facilities, together with his Unit's concomitant interest in the Condominium Corporation and liability for sharing in the common expenses of the Condominium shall be reduced. . . .

> "Every Unit Owner by the acceptance of his deed to his Unit *hereby consents* . . . to the Declarant's reserved rights under this Section 13 *and expressly agrees* to the alteration of the Unit's appurtenant percentage ownership interest in the Common Areas and Facilities of the Condominium . . . when new phase(s) are added . . . by amendment to the Master Deed pursuant to this Section 13." (Emphasis supplied.)

The issue not being before us, we assumed without deciding that the "developer's reserved right" thus to add phases (not, in any event, a retained property interest excluded by the developer from the interests initially subjected to c. 183A as in *Beaconsfield Towne House Condominium Trust* v. *Zussman,* 416 Mass. 505 [1993], and *Commercial Wharf East Condominium Assn.* v. *Waterfront Parking Corp.,* 407 Mass. 123 [1990]), was limited by statute to seven years. The unit owners' percentage interest thus became fixed with the expiration of that period.

1997 Supp.), both of which authorize the reservation by developers of phasing rights and the execution of phasing amendments without unit owner consent.

The Legislature recently rewrote § 5(*b*). St. 1994, c. 365, § 2, approved January 13, 1995, and by § 5 made effective January 1, 1996. It did so at a time when § 5(*b*) had been given a strict construction by the Supreme Judicial Court in both *Strauss*, *supra*, and *Kaplan*, *supra*. Notably, the Legislature did not change the unanimous consent requirement at issue here. Also of interest is that the Legislature, while addressing such matters as the granting of common area and limited common area easements and extensions of time within which developers may add phases, left the power to make such grants squarely with the organization of unit owners and *not* with declarants. The Legislature thereby underscored its long-standing concern for the interests of condominium unit owners.

Finally, it is the developer who drafts the master deed and who must live with its shortcomings. Although the statute is generally silent on the topic of phased development, the language and imperatives of § 5(*b*) are plain to see, albeit perhaps vexing to those contemplating phased development. Various treatises and practice guides long available to the bar[3] have wrestled with the difficulties of rendering phased development compatible with c. 183A. I am unaware of any which recommend the technique used here, i.e., a schedule or "menu" of alternative percentage interests, such as Exhibit 3A, standing alone, unaccompanied by some form of unit owner consent provision. By itself, the "menu" does not go far enough to meet the stringent requirements of § 5(*b*).

Absent provision for unanimous unit owner consent in the master deed, I think that the trial judge was correct in concluding that unanimous phase I unit owner consent would have to be obtained before phases II and III could be developed.

---

[3]See note 1, *supra*.