BRIAN T. WITKOWSKI *vs.* RICHARD W. ENDLAR INSURANCE
AGENCY, INC., & another.[1]

No. 11-P-540.

Essex. January 17, 2012. - May 29, 2012.

Present: GREEN, BROWN, & AGNES, JJ.

*Real Property,* Condominium, Title insurance. *Insurance,* Certificate of insur-
ance, Title insurance, Misrepresentation. *Negligence,* Misrepresentation.

In a civil action brought by the owner of a condominium unit (plaintiff)
against an insurance agency, alleging that he had relied to his detriment on
a certificate that the agency had furnished prior to the plaintiff's purchase
of the unit, the judge erred in granting summary judgment in favor of the
agency, where the record contained triable questions of fact concerning
whether the certificate falsely represented that the plaintiff's unit was
covered under the master condominium policies of flood insurance, and
whether the plaintiff reasonably relied to his detriment on that representation.
[789-791]
A policy of title insurance, which furnished coverage only for defects of title
existing as of the date of its issuance, afforded the owner of a condominium
unit no right or remedy for any defect in title caused or brought about by a
later flood that rendered unmarketable the title to his unit. [791-792]


CIVIL ACTION commenced in the Superior Court Department on
May 22, 2007.

The case was heard by *Howard J. Whitehead,* J., on motions
for summary judgment, and a motion for entry of a stipulated
judgment was considered by *Timothy Q. Feeley,* J.

*Tyson R. Ence* for the plaintiff.

*William P. Rose* for Richard W. Endlar Insurance Agency,
Inc.

*Meredith A. Swisher* for First American Title Insurance
Company.

GREEN, J. On May 15, 2006, rising flood waters from the Shaw-

[1]First American Title Insurance Company.

sheen River inundated the basement residential condominium unit the plaintiff had purchased in July of the previous year. The unit was completely destroyed and, due to applicable building code requirements, cannot be rebuilt. At issue in the present appeal is the propriety of summary judgment entered in favor of the defendants Richard W. Endlar Insurance Agency, Inc. (Endlar), and First American Title Insurance Company (First American).[2] As to Endlar, the plaintiff contends that he relied to his detriment on a certificate Endlar furnished prior to the plaintiff's purchase of the unit, falsely representing that the unit was covered by flood insurance. As to First American, the plaintiff contends that his inability to rebuild his unit renders title to his unit unmarketable, within the meaning of the policy of title insurance he purchased incident to his purchase of the unit. We affirm the judgment concerning First American but reverse the judgment concerning Endlar, as the certificate furnished by Endlar, considered in light of the circumstances attending the plaintiff's request for it and, particularly, the purpose for which Endlar knew it was intended, reasonably may be read to represent, falsely, that the plaintiff's unit was covered by flood insurance.

We summarize the facts appearing in the summary judgment record, viewed in the light most favorable to the plaintiff. The Balmoral Condominium (condominium) is located at 16 Balmoral Street, Andover. It was established in 1984, as a conversion to residential condominium use of a building originally constructed in 1920.[3] As established, the condominium included eighty-six residential units; four of those, including unit 4 (the plaintiff's unit), were located in the basement of the building. The condominium is located in a floodplain area designated by the Federal Emergency Management Agency (FEMA) as an AE flood zone, an area of special flood hazard.[4] Under applicable Federal law, federally regulated lending institutions are forbidden

---

[2]The plaintiff's complaint also sought damages from the Balmoral Condominium Trust. Following the entry of orders allowing the motions of the defendants Endlar and First American, the plaintiff and Balmoral Condominium Trust negotiated a settlement of all claims between them, and the latter accordingly is not a party to this appeal.

[3]The building formerly served as the executive offices of the American Woolen Company.

[4]The FEMA flood hazard designation of the area within which the condo-

to make any loan secured by improved real estate located in an area of special flood hazard, unless the property is covered for the term of the loan by flood insurance in specified amounts. See 42 U.S.C. § 4012a(b)(1) (2006).

The plaintiff signed a purchase and sale agreement for the purchase of unit 4 in the condominium sometime in the late spring of 2005. Prior to the closing on his purchase of the unit, the plaintiff learned that it was located in a special flood hazard area and that his mortgage lender accordingly would require evidence of flood insurance for the unit as a condition of closing. Elizabeth Kelley, a paralegal employed by the attorney representing the plaintiff's mortgage lender,[5] contacted the management company for the condominium to request proof of flood insurance; she in turn was referred to Endlar. Kelley thereafter transmitted to Endlar a facsimile request for proof of flood insurance on the unit, informing him that the plaintiff's lender required proof of flood insurance on the unit in order to advance funds on a mortgage loan for purchase of the unit. A few days later, Endlar responded to Kelley with a request for additional information, including the names and addresses of the prospective purchaser and mortgage lender. Kelley furnished the requested information, and on June 29, 2005, Endlar issued a one-page statement regarding insurance on the condominium. At the top of the page, the statement begins with the words "THIS IS TO CERTIFY THAT"; it then proceeds to identify the plaintiff as the unit owner and GMAC Mortgage Corporation as his "[b]ank." Continuing, the document states that the "[a]bove unit owner *is insured* under the Master Policy issued to: Balmoral Condominium Trust Its Trustees and All Unit Owners, A.T.I.M.A.[6] *as follows" (emphasis added). Among other policies of insurance and types of coverage, the document then

---

minium is located apparently was changed to zone AE in 1989 from a previous designation as zone B. Zone B is not an area of special flood hazard. The record does not illuminate the reason for the change in designation.

[5]Kelley is also the plaintiff's sister.

[6]A sentence appearing between the identification of the plaintiff and his mortgage lender and the just quoted sentence stating that the above unit owner "is insured" reads as follows: "Mortgagee Clause amended to Include 'It's [*sic*] successors and/or assigns as their interest [*sic*] may appear.' " In its brief, Endlar suggests that "A.T.I.M.A." is an acronym for "as their interests may appear."

lists flood insurance issued by "Clarendon National Ins." in the amount of "2500000," and flood insurance issued by "The Hartford" covering the "Building" in the amount of "9800000." A signature appears at the bottom of the page, apparently for the purpose of confirming the information contained therein. Immediately above the signature line, the following legend appears:

> "The Insured's Name, for the purpose of this insurance, shall be as insurance Trustee for all Unit-Owners collectively. This memorandum is for information only; it is not a contract of insurance but attests that policies as numbered herein, and as they stand at the date of this certificate, have been issued by the Companies. Said policies are subject to change by endorsement, and to assignment and cancellation in accordance with their terms."[7]

Satisfied with the certificate as proof of the existence of flood insurance on the unit, the attorney for the plaintiff's mortgage lender authorized the advance of mortgage funds, and the plaintiff closed on his purchase of the unit on July 25, 2005.

Incident to his purchase of the unit, the plaintiff also purchased a policy of title insurance from First American. Among the risks insured against by the policy is the risk that (as of the date of issuance of the policy) "[y]our Title is unmarketable, which allows someone else to refuse to perform a contract to purchase the Land, lease it or make a Mortgage loan on it." Among the exclusions from coverage under the policy are losses resulting from "1. Governmental police power, and the existence or violation of any law or government regulation.[8] . . . 2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not apply to violations of building codes if

---

[7]A copy of the insurance certificate is reproduced in the Appendix to this opinion.

[8]The exclusion lists various nonexclusive illustrative examples of such regulations, including those concerning building, zoning, land use, and environmental protection. It also provides that the exclusion does not apply if notice of any violation or enforcement appears in the public records on the policy date, and that it does not limit the coverage described for various other enumerated risks not relevant to the present case.

notice of the violation appears in the Public Records at the Policy Date.''

The condominium sustained substantial damage as the result of a flood of the Shawsheen River on May 15, 2006. The plaintiff's unit was completely destroyed. Approximately one week after the flood, a trustee of the condominium association told the four basement unit owners that their units were excluded from coverage under the association's master policy. Under applicable building codes, because of its location at basement level in a special flood hazard zone, the plaintiff's unit cannot be rebuilt for the purpose of human occupancy.

We address the plaintiff's claims against the defendants Endlar and First American in turn.

In its motion for summary judgment, Endlar asserted that the plaintiff's claim for misrepresentation fails as matter of law because the certificate it furnished contained no false statement. According to Endlar, the certificate merely states (correctly) that the policies listed in the certificate had issued in favor of the Balmoral Condominium Trust. More to the point, in Endlar's view, the certificate makes no representation concerning insurance issued in favor of the plaintiff's unit (as compared to the condominium as a whole).[9] Though such a narrow reading of the certificate is not implausible, we do not consider it compelled as matter of law. To the contrary, in our view, particularly when considered in the context of the circumstances in which it was issued, the certificate may also be read fairly to assert that the plaintiff's unit was included within the coverage furnished by the listed policies.

Viewed in the light most favorable to the plaintiff, the summary judgment record reveals that Kelley communicated to Endlar, on the plaintiff's behalf, the need for a certificate verifying flood insurance coverage for the plaintiff's unit. In response, Endlar furnished a certificate stating that the plaintiff, as owner of unit 4, "is insured" under the master policies issued to the condominium trust including, among other coverage, flood insur-

---

[9]Endlar further qualifies the scope of any representation contained in the certificate by asserting that it describes the listed coverage as being "subject to the terms and conditions of each policy." We note, however, that no such qualifying or limiting language appears in the language of the certificate.

ance on the building under a policy issued by The Hartford up to a policy limit of $9,800,000. Though the certificate made clear that it is not a contract of insurance, it stated clearly that the listed policies had been issued.

Contrary to the defendant's assertions, the certificate does not contain any express statement that the policies listed thereon are subject to any other conditions or limitations, or that the recipient should review the policies themselves in order to ascertain the scope or existence of coverage. Moreover, though the fact that the policies might contain certain qualifications or limitations may be implicit (since the certificate cannot reasonably be expected to set forth all the terms, conditions, and details of every policy), the exclusion of the plaintiff's unit from coverage entirely is a particularly dramatic limitation in the circumstances. It is one thing to recognize that, in listing the various insurance policies covering the condominium, the certificate does not describe the details of all conditions or limitations of such coverage; it is quite another for an undisclosed exclusion to vitiate the essential purpose for which the certificate was requested. The summary judgment record indicates that the plaintiff's unit (together with the other three basement units) was excluded from coverage under the master flood insurance policy, suggesting that other above-grade units in the condominium were not so excluded.[10] Accordingly, Endlar's contention that the certificate verified flood insurance coverage only for the "building" (but not for the units within the building) rings hollow.

Moreover, the disclaimer that the certificate is not a contract of insurance does not derogate, by its terms or in its context, from the fact that the recipient of the certificate should be entitled to rely on its accuracy, at least concerning the issuance and existence of the policies listed thereon. Particularly in the circumstances attending the request for the certificate, Endlar was aware that the plaintiff (and his mortgage lender) required proof of flood insurance coverage on his unit, and that they would rely on the insurance certificate Endlar furnished to constitute that proof. The plaintiff's claim accordingly does not rest on a claim of contract, based on the certificate; instead it rests on the contention that the plaintiff relied to his detriment

---

[10]The association's apparent use of insurance proceeds to rebuild the units other than the four basement units corroborates that suggestion.

on materially false information furnished by Endlar, in circumstances in which Endlar was aware that the purpose for which the plaintiff had requested the certificate would likely be followed by such reliance. See *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 193 (1982).

Endlar's reliance on *Quigley* v. *Bay State Graphics, Inc.*, 427 Mass. 455, 462 (1998), for the proposition that a claim of misrepresentation based on a certificate of insurance must fail when the certificate is accurate, is misplaced. The certificate in the present case was requested for the express purpose of verifying the existence of flood insurance coverage on the plaintiff's unit. On its face, it is somewhat ambiguous, but a reasonable fact finder could construe it to represent that the unit is covered by flood insurance, particularly since (i) it was delivered in direct response to a request for verification of flood insurance coverage for the unit, (ii) on the summary judgment record it appears that all the units in the condominium other than the four basement units were covered by the master policy of flood insurance, and (iii) the certificate contains no indication or warning that the plaintiff's unit was excluded entirely from such coverage.

On the summary judgment record, construed in the light most favorable to the plaintiff, we conclude that there are triable questions of fact concerning whether the certificate falsely represented that the plaintiff's unit was covered under the master condominium policies of flood insurance, and whether the plaintiff reasonably relied to his detriment on that representation. The summary judgment dismissing the plaintiff's claims against Endlar accordingly is reversed.

The plaintiff's claim against First American stands differently. The parties acknowledge that the terms of the policy of title insurance are unambiguous; we accordingly construe and enforce them according to their plain meaning.[11] See *Somerset Sav. Bank* v. *Chicago Title Ins. Co.*, 420 Mass. 422, 427 (1995). As we have observed, the policy specifically excludes from coverage any losses resulting from governmental regulations (including zoning and building codes). "There is a difference between eco-

---

[11]Though the plaintiff emphasizes that the policy he purchased was an enhanced, so-called "Eagle" policy, its coverage on the relevant question of marketability of title is identical to that in First American's standard policy.

nomic lack of marketability, which concerns conditions that affect the use of land, and title marketability, which relates to defects affecting legally recognized rights and incidents of ownership." *Id.* at 428. See *Chicago Title Ins. Co.* v. *Kumar*, 24 Mass. App. Ct. 53, 56-57 (1987). Put simply, the fact that Federal flood insurance regulations may restrict the availability of conventional mortgage financing for the unit may affect its value, or even its economic marketability, but it does not constitute a lien or other encumbrance on the property and does not affect its title. See *Somerset Sav. Bank* v. *Chicago Title Ins. Co.*, *supra* at 429.

Our analysis is unaffected by the plaintiff's suggestion that his property should be treated differently by reason of its status as a condominium unit, created under the provisions of G. L. c. 183A. It is true that the unit exists only as created under, and described in, the condominium master deed. See *Kaplan* v. *Boudreaux*, 410 Mass. 435, 438 (1991). Accordingly, it is also true that the inability to rebuild the unit following its destruction in the May, 2006, flood renders it literally and legally impossible to recreate the unit itself. See *Podell* v. *Lahn*, 38 Mass. App. Ct. 688, 694 n.7 (1995) (noting essential function of "as-built" plans in creating and describing condominium units under c. 183A). However, even if we assume (without deciding) that the plaintiff is correct in his contention that the inability to recreate the unit as a legal entity impairs marketability of title to the unit, that condition arose only as a result of the flood in May, 2006, and did not exist on the date the title policy issued. Accordingly, the title policy, which furnishes coverage only for defects in title existing as of the date of its issuance, affords no right or remedy to the plaintiff for any defect in title caused or brought about by the May, 2006, flood. The motion judge correctly entered summary judgment dismissing the plaintiff's claims against First American.

*Conclusion.* The judgment is reversed insofar as it dismissed the plaintiff's claims against Endlar. In all other respects, the judgment is affirmed. The case is remanded to the Superior Court for such further proceedings as may be appropriate.

*So ordered.*