M. ROBERT QUELER & others[1] *vs.* JOHN F. SKOWRON &
others,[2] individually & as trustees,[3] & others.[4]

Suffolk. November 7, 2002. - December 19, 2002.

Present: MARSHALL, C.J., GREANEY, SPINA, SOSMAN, & CORDY, JJ.

*Condominiums,* Master deed, Common area. *Real Property,* Condominium,
    Determinable fee, Condition subsequent. *Statute,* Construction.

This court concluded that the declarants for a phased condominium develop-
    ment could preserve in the master deed an interest in property that had
    been submitted to the provisions of the condominium statute, G. L. c. 183A,
    such that the designated property revested in the declarants when a speci-
    fied condition occurred; since the interest the declarants had submitted to
    G. L. c. 183A was a defeasible fee, retaining in the master deed a separate
    interest in the unphased portions of the development plan that could vest
    on the occurrence of the specified condition, the declarants were not bound
    by the removal provisions of G. L. c. 183A, § 19, as if they had submitted
    an estate of fee simple absolute. [310-315]

CIVIL ACTION commenced in the Land Court Department on
July 21, 1999.

The case was heard by *Mark V. Green,* J., on motions for
summary judgment, and separate and final judgment was entered
by him.

The Supreme Judicial Court granted an application for direct
appellate review.

*Thomas O. Moriarty (V. Douglas Errico* with him) for John
F. Skowron & others.

[1]Lexington Savings Bank and various other unit owners and mortgagees at
Bishops Forest II Condominium.

[2]Robert Rosenblatt, F. William Sawyer, Lisa J. Boucher, Linda Woods,
Dorothy M. Vacca, and Melissa Fischler Hed.

[3]Of Bishops Forest Condominium Trust.

[4]Other owners of the 269 units in the Bishops Forest Condominium; Crow,
Terwilliger & Dressler, Inc., individually and as general partner of First
Spring Street Limited Partnership I; Northeast Residential #1 Corp., as general
partner of First Spring Street Limited Partnership II; and TC Residential
Boston, Inc., as general partner of TCR First Spring Street III Limited
Partnership.

*Samuel B. Moskowitz* (*Edward S. Cheng* with him) for M. Robert Queler & others.

*Lawrence P. Heffernan* (*Clive D. Martin* with him) for Karen A. Drury & others.

*John C. LaLiberte,* for John Boujoulian and others, was present but did not argue.

*Laura C. Capshaw,* for Susan Lee Klibanoff, was present but did not argue.

*Michael E. Malamut,* for New England Legal Foundation, amicus curiae, submitted a brief.

*Kathleen M. Mitchell & Robert J. Galvin,* for The Massachusetts Conveyancers Association, Inc., & another, amici curiae, submitted a brief.

SPINA, J. Bishops Forest Condominium (BFC) and Bishops Forest II Condominium (BF II) are adjoining condominiums located in Waltham that were built as part of a "phased" development plan. The plaintiffs are various unit owners and mortgagees of BF II; the defendants are trustees and unit owners of BFC, as well as the original developers of BFC and BF II. Following disputes over cost-sharing arrangements between the two condominiums, the plaintiffs filed a complaint for declaratory relief and damages. In particular, they sought a declaration that BF II was lawfully created and that its unit owners held clear marketable title to their respective units and to BF II common areas (subject to any mortgages or liens of record). On cross motions for summary judgment, a judge in the Land Court entered judgment in favor of the plaintiffs. The defendants appealed to the Appeals Court, and we granted the plaintiffs' application for direct appellate review. The issue we now consider is whether the declarant for a phased condominium development may reserve in the master deed an interest in property that is submitted to the provisions of the condominium statute, G. L. c. 183A, such that the designated property will revest in the declarant if a specified condition occurs. We conclude that such a reservation is lawful and affirm the judgment of the Land Court.[5]

1. *Factual and procedural background.* The following facts

---

[5] We acknowledge the amicus briefs filed by the New England Legal Foundation, The Massachusetts Conveyancers Association, Inc., and The Abstract Club.

are not in dispute. In March, 1984, Crow, Terwilliger & Dressler, Inc. (Crow), purchased two parcels of land in Waltham comprised of approximately 70.5 acres (Bishops Forest land). In June, 1985, the city of Waltham granted Crow a special permit to construct up to 350 residential condominium units on the Bishops Forest land. Crow proceeded to convey portions of such land to two limited partnerships,[6] one of which later conveyed a portion of its interest to a third.[7]

On December 7, 1987, Crow and the three limited partnerships (collectively, the declarants) created BFC by recording the Bishops Forest condominium master deed (master deed) in the appropriate registry of deeds. The master deed stated that BFC would be developed in phases, starting with Phase I, which would be governed by and subject to the provisions of G. L. c. 183A.[8] The declarants reserved the right to add phases after Phase I, but they were not obligated to do so.[9] The master deed further provided that if it had not been amended to add all authorized phases by the time the declarants' phasing rights terminated, title to any portion of the Bishops Forest land that remained undeveloped would revest in the declarants or their successors or assigns. More specifically, art. III of the master deed, entitled "DESCRIPTION OF PHASE I AND ADDITIONAL PHASES," provided, in relevant part, as follows:

---

[6]First Spring Street Limited Partnership I and First Spring Street Limited Partnership II.

[7]First Spring Street Limited Partnership I conveyed to TCR First Spring Street III Limited Partnership.

[8]The first paragraph of art. III of the master deed states, in relevant part: "It is the intention of the GRANTOR to develop the CONDOMINIUM in phases, said phases not to exceed seventy-nine (79). At the time of recording of this Master Deed, the Units of the CONDOMINIUM shall be those Units included within Phase I of the CONDOMINIUM. Phase I shall consist of the land, with all Buildings and all improvements thereon, situated on the northerly side of Bishops Forest Drive and further shown on the Plan entitled 'Phase I Bishops Forest Condominium, Waltham, Mass,' (PHASE 1 PLAN), dated November 21, 1987, prepared by Norwood Engineering Co., Inc. and recorded herewith."

[9]The second paragraph of art. III of the master deed states, in relevant part: "The GRANTOR may (but is not obligated to) construct Phases 2 to 79, which are presently excluded from the CONDOMINIUM. The GRANTOR reserves the right to add the other Phases in any order it deems appropriate. If all Phases are completed, the CONDOMINIUM will contain a total of three hundred and fifty (350) Units."

"Each purchaser of a Unit (Unit Owner, which term shall include his successors or assigns) within the CONDOMINIUM, by his recording of a deed to his respective Unit, shall be deemed to consent to the following amendments to this Master Deed:

"A. At such times as construction of the Buildings in any phase has been completed, the GRANTOR may, without the necessity of further consent from any Unit Owner or mortgagee, amend this Master Deed so as to subject any such Phase to the provisions of the ACT. . . .

"B. In the event this Master Deed has not been amended to add all Phases by the TERMINATION DATE (as described below), then the remaining land on the SITE PLAN which has not been included in any Phase Plans shall be deemed to be removed from the provisions of the ACT, and the interest, if any, of any Unit Owner shall terminate and revest in the GRANTOR, its successors or assigns. Each Unit Owner does appoint the GRANTOR, its successor or assigns, as his attorney to execute, acknowledge and deliver any or all instruments necessary or appropriate to remove the remaining land from the provisions of the ACT, and to revest title thereto in the GRANTOR, its successors or assigns.

"The rights of the GRANTOR reserved herein to add additional Phases shall terminate and be of no force and effect on the first to occur of the following: (TERMINA-TION DATE):

"A. Seven (7) years from the date hereof; or

"B. At such time as the GRANTOR has recorded a written instrument at the Middlesex South Registry of Deeds (Registry), executed by the GRANTOR, by which the GRANTOR expressly releases the right to add additional phases; or

"C. The inclusion within the CONDOMINIUM of the maximum number of Units permitted hereunder."

Between January, 1988, and June, 1994, the declarants added phases to BFC, pursuant to the terms of the master deed. At the

same time, they held themselves out as the owners of those portions of the Bishops Forest land not yet phased into BFC and exercised various incidents of ownership with respect to this land.[10] By June 30, 1994, a total of 269 condominium units had been phased into BFC.[11]

Ultimately, the declarants conveyed their remaining right, title, and interest in the Bishops Forest land to TCR Bishops Forest Land Limited Partnership (TCR). On September 23, 1994, TCR recorded a certificate entitled "Removal of Land from Condominium" in the appropriate registry of deeds. This removal certificate stated:

> "Pursuant to subparagraph B of the Master Deed of the Bishops Forest Condominium as noted above, the undersigned [TCR] hereby expressly releases the right to add any additional phases to the Condominium and in accordance with the provisions of the Master Deed, Lots 1 and 4F, not having been included in any Phase Plans as defined in the Master Deed shall be deemed removed from the provisions of Chapter 183 [*sic*] and said Condominium."

On September 23, 1994, and October 18, 1994, TCR conveyed to Pulte Home Corporation of Massachusetts (Pulte) the land described on the removal certificate as Lots 1 and 4F (revested land). Pulte then created BF II by recording the Bishops Forest II condominium master deed in the appropriate registry of deeds and submitting the revested land to the provisions of G. L. c. 183A.

On June 8, 1995, Pulte entered into an "Amended and Restated Declaration of Cross-Easements, Covenants and

---

[10]On April 4, 1988, the declarants entered into an agreement among themselves describing how the rights they had reserved in the master deed would be exercised. The declarants mortgaged and conveyed portions of the Bishops Forest land, and they paid real estate taxes levied on the unphased portions of this land. The declarants also entered into a "Declaration of Cross-Easements, Covenants and Restrictions" with the BFC trustees, pursuant to which they granted each other various reciprocal rights with respect to BFC and the Bishops Forest land.

[11]The thirty-second amendment to the master deed, which was the final phasing amendment, was recorded in the appropriate registry of deeds on June 30, 1994. Lots 1 and 4F were the only parcels shown on the BFC site plan that had not been included on any phase plan and thus made a part of BFC.

Restrictions" (amended cross easements agreement) with the BFC trustees and the sole BF II trustee, pursuant to which BF II unit owners were granted rights to use various facilities at BFC, including swimming pools, tennis courts, parking lots, and landscaped areas. Several months thereafter, the BFC trustees and the BF II trustees became involved in disputes over payments due under the amended cross easements agreement. When negotiations between the parties failed to resolve the disputes, the BFC trustees filed a verified complaint in the Superior Court, seeking declaratory relief and damages from the BF II trustees.[12] During the pendency of this litigation, and following the decision of the Appeals Court in *Levy* v. *Reardon*, 43 Mass. App. Ct. 431 (1997), the BFC trustees challenged the legal validity of BF II. In response, the plaintiffs brought the present action to determine their rights.

On July 21, 1999, the plaintiffs filed a nine-count complaint in the Land Court, asserting claims for equitable estoppel against the BFC trustees (Count I); equitable estoppel against the BFC unit owners (Count II); waiver (Count III); reformation (Count IV); declaratory judgment (Count V); quiet title (Count VI); unjust enrichment (Count VII); relief against the BFC trustees under G. L. c. 183A, § 5 (*b*) (2) (iii) (Count VIII); and slander of title (Count IX). The BFC trustees filed an answer, and they counterclaimed for declaratory judgment (Count I); writ of entry (Count II); trespass (Count III); and quiet title (Count IV). A multitude of counterclaims, cross claims, and third-party claims were then filed among various plaintiffs and defendants, the details of which need not be explicated here. Following a status conference, the plaintiffs moved for summary judgment on Count V (declaratory judgment) and Count VI (quiet title) of their complaint; the defendants filed a cross motion for summary judgment on their corresponding claims. A judge in the Land Court allowed the plaintiffs' motion for summary judgment and denied the defendants' cross motion for summary judgment. A separate and final judgment was entered pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974). The judge

---

[12]A judge in the Superior Court allowed a motion by the BF II trustees to compel arbitration. Before arbitration commenced, however, the parties agreed to a compromise on the disputed charges, and the case was dismissed.

declared, inter alia, that BF II was a valid condominium, legally separate and distinct from BFC, under G. L. c. 183A, and he entered judgment quieting title to BF II in its unit owners.

2. *Discussion.* The thrust of the defendants' argument is that art. III (B) of the master deed, stating that those portions of the Bishops Forest land that had not been phased into BFC as of a specified termination date revested in the declarants, is invalid because it violates the provisions of G. L. c. 183A. As such, they continue, the land and improvements now known as BF II remain a part of the common area of BFC. Based on our consideration of G. L. c. 183A, the master deed, and principles of common law, we disagree with the defendants' position.

We begin our discussion by recognizing that under common law, a property owner has the right to impose limitations or conditions on an estate that is conveyed to another, such that the conveyance is not one of fee simple absolute. See *Gray* v. *Blanchard,* 8 Pick. 284, 288-290 (1829). A property owner who imposes such limitations or conditions has conveyed a defeasible estate, one that may last forever, but may also terminate, either automatically or by some affirmative step of the conveyor, on the occurrence of a stated event. See *Proprietors of the Church in Brattle Sq.* v. *Grant,* 3 Gray 142, 146-148 (1855); Restatement of Property § 16 (1936). A defeasible estate may be a fee simple determinable or a fee simple subject to a condition subsequent. "A fee simple determinable is created by a conveyance which contains words effective to create a fee simple and in addition a provision for the automatic expiration of the estate on the occurrence of a stated event."[13] *Selectmen of Provincetown* v. *Attorney Gen.,* 15 Mass. App. Ct. 639, 644-645 (1983), quoting *Selectmen of Nahant* v. *United States,* 293 F. Supp. 1076, 1078 (D. Mass. 1968). See Restatement of Property, *supra* at § 44. "A fee simple subject to a condition

[13]See, e.g., *Brown* v. *Independent Baptist Church of Woburn,* 325 Mass. 645, 645-646 (1950) (devise to defendants "so long as they shall maintain and promulgate their present religious belief and faith and shall continue a Church"); *Institution for Sav.* v. *Roxbury Home for Aged Women,* 244 Mass. 583, 586 (1923) (grant in trust for "as long as the present [plaintiff] Institution shall continue to exist"); *First Universalist Soc'y of N. Adams* v. *Boland,* 155 Mass. 171, 174 (1892) (grant to plaintiff "so long as said real estate shall . . . be devoted to the . . . support of . . . doctrines of the Christian religion").

subsequent differs from a fee simple determinable in that the former is made defeasible upon the occurrence of the condition, entry being necessary to terminate the fee."[14] *Selectmen of Provincetown* v. *Attorney Gen., supra* at 645. See Restatement of Property, *supra* at § 45. In order to determine whether BF II was lawfully established, we must examine the nature of the estate conveyed and how that estate fits within the provisions of G. L. c. 183A.

A condominium is created by a "declarant" who records a master deed that "submits" land to the provisions of G. L. c. 183A. See G. L. c. 183A, §§ 1, 2. The master deed sets forth the nature of the property interest being conveyed, describes the land, buildings, units, and common areas of the condominium, sets forth the purposes for and use restrictions on said buildings and units, and describes the method by which the master deed may be amended. See G. L. c. 183A, § 8. It is well established that "[d]eeds should be 'construed as to give effect to the intent of the parties, unless inconsistent with some law or repugnant to the terms of the grant.' " *Commercial Wharf E. Condominium Ass'n* v. *Waterfront Parking Corp.,* 407 Mass. 123, 131 (1990), *S.C.,* 412 Mass. 309 (1992), quoting *Harrison* v. *Marcus,* 396 Mass. 424, 429 (1985). See *Bass River Sav. Bank* v. *Nickerson,* 303 Mass. 332, 334 (1939). The intent of the parties is gleaned from "the words used, interpreted in the light of the material circumstances and pertinent facts known to them at the time [the deed] was executed." *Bessey* v. *Ollman,* 242 Mass. 89, 91 (1922).

When the master deed at issue here was recorded, BFC consisted of the land, together with all buildings and improvements thereon, comprising Phase I of the development. The declarants expressly reserved the right to add other phases and, when construction of the buildings in such other phases was completed, the declarants could amend the master deed so as to

---

[14]See, e.g., *Dyer* v. *Siano,* 298 Mass. 537, 538, 540 (1937) (a devise, "[i]t being understood and agreed that the . . . lands are to be used for Railroad and Station purposes: otherwise the same . . . shall revert to the Grantors"); *United States* v. *16 Acres of Land in Village of Hyannis,* 47 F. Supp. 603, 604 (D. Mass. 1942) (devise to town for park purposes, but "[s]hould the [land] or any part thereof be used at any time . . . for other than park purposes after my death, the same shall revert to [two named devisees]").

subject those phases to the provisions of G. L. c. 183A. In the event that all seventy-nine phases had not been added to BFC by the defined termination date, the undeveloped phases of the Bishops Forest land were deemed removed from the provisions of c. 183A, and they revested in the declarants, their successors or assigns. In accordance with the common law and based on the language of the master deed, recognizing that this was a phased development, we conclude that the clear intent of the declarants was not to "submit" to G. L. c. 183A an estate of fee simple absolute, but rather to submit a defeasible fee. The question then becomes whether the declarants' retention of such an interest is inconsistent with the provisions of G. L. c. 183A. We conclude that it is not.

"A statute is not to be interpreted as effecting a material change in or a repeal of the common law unless the intent to do so is clearly expressed." *Pineo* v. *White*, 320 Mass. 487, 491 (1946). See *Commercial Wharf E. Condominium Ass'n* v. *Waterfront Parking Corp.*, *supra* at 129 (a court "will not presume that the Legislature intended . . . a radical change in the common law without a clear expression of such intent"). The purpose of G. L. c. 183A is "to clarify the legal status of the condominium in light of its peculiar characteristics." *Grace* v. *Brookline*, 379 Mass. 43, 52 (1979). General Laws c. 183A is essentially an enabling statute, setting out a framework for the development of condominiums in the Commonwealth, while providing developers and unit owners with planning flexibility. See *Barclay* v. *DeVeau*, 384 Mass. 676, 682 (1981). Such flexibility is particularly important with respect to phased condominium developments where long-term financial and market conditions may be uncertain.[15] While G. L. c. 183A mandates that certain minimum requirements for establishing condominiums be met, those matters that are not specifically addressed in the statute are to be worked out by the involved

[15]"Phasing of a condominium permits a developer to expand the size and scope of a condominium project in response to market conditions. In a phased condominium development, groups or stages of units are completed over a period of several years and become part of the condominium by successive amendments to the master deed. 'Phasing' is not a statutory term, but is a usage that has grown out of the general enabling provisions of G. L. c. 183A." *Podell* v. *Lahn*, 38 Mass. App. Ct. 688, 689 n.3 (1995).

parties. See *Tosney* v. *Chelmsford Village Condominium Ass'n*, 397 Mass. 683, 686-687 (1986).

The defendants contend that any provision in a master deed, like art. III (B), that may result in a division of the common area, is inconsistent with G. L. c. 183A, §§ 5 (*c*), 19. Contrary to their argument, neither of these statutory provisions precludes the declarant of a phased development from submitting to c. 183A a defeasible fee, thereby allowing the declarant to retain an interest in the land, as set forth in the master deed, which will revest in the declarant on the occurrence of a stated event.

General Laws c. 183A, § 5 (*c*), is free from ambiguity. See *Beaconsfield Towne House Condominium Trust* v. *Zussman*, 401 Mass. 480, 484 (1988), *S.C.*, 416 Mass. 505 (1993). It provides, in pertinent part: "The common areas and facilities shall remain undivided and no unit owner or any other person shall bring any action for partition or division of any part thereof . . . . Any covenant or provision to the contrary shall be null and void." G. L. c. 183A, § 5 (*c*). In *Commercial Wharf E. Condominium Ass'n* v. *Waterfront Parking Corp.*, *supra* at 128-130, this court considered whether a developer's retained interest in land constituted a division of the common area and therefore was void under § 5 (*c*). We concluded that a developer properly could retain an interest in land described in the master deed, but by doing so, such interest does not become "part of the condominium common area, [and] its retention does not constitute a division of the common area." *Id.* at 131.

Although the interest created in *Commercial Wharf E. Condominium Ass'n* v. *Waterfront Parking Corp.*, *supra* at 125, was one that was retained by the developer by operation of an instrument recorded *prior* to the master deed, there is nothing in § 5 (*c*) that prohibits the declarant of a phased development from retaining such an interest by operation of the master deed itself.[16] Cf. *Tosney* v. *Chelmsford Village Condominium Ass'n*, *supra* at 685, 687 (developer and condominium association

---

[16]The ability of those interested in purchasing a condominium unit to know from an examination of the property records, and in particular the master deed, whether there are any limitations on the estate that they hope to acquire is a substantial public interest. See *Commercial Wharf E. Condominium Ass'n* v. *Waterfront Parking Corp.*, 407 Mass. 123, 129 (1990), *S.C.*, 412 Mass. 309 (1992). Here, the unit purchasers had actual notice of the phased development

permitted to establish "limited" common area charges where set forth in agreement recorded with and referenced in master deed); *Viola* v. *Millbank II Assocs.*, 44 Mass. App. Ct. 82, 85-87 (1997) (developers entitled to build additional phases of condominium project without consent of all unit owners where permitted by terms of master deed). In fact, the definition of "[c]ommon area" set forth in G. L. c. 183A, § 1, anticipates such a possibility. It states that " '[c]ommon areas and facilities' shall, *except as otherwise provided or stipulated in the master deed*, mean and include . . . [t]he land on which the building is located, or the lessee's interest in any lease of such land which is submitted to the provisions of this chapter" (emphasis added).[17] See *Commercial Wharf E. Condominium Ass'n* v. *Waterfront Parking Corp.*, *supra* at 130. Consistent with our conclusion is the clear language of G. L. c. 183A, § 2, which relates to the application of the condominium statute, and which states that "[t]he provisions of [c. 183A] shall not be deemed to preclude or regulate the creation or maintenance of other interests in real property *not expressly declared by the owner . . . to be subject thereto*" (emphasis added). Here, the declarants retained in the master deed a separate interest in the unphased portions of the Bishops Forest land. Such retained interest was not part of the "common area" pursuant to the terms of the master deed. Therefore, its eventual conveyance by the declarants to Pulte for the development of BF II did not constitute a "division" of the common area in violation of § 5 (c). See *Commercial Wharf E. Condominium Ass'n* v. *Waterfront Parking Corp.*, *supra* at 131.

---

plan, as well as the implications of the declarants' failure to add all phases prior to the termination date, because it was fully disclosed in the master deed.

[17]We note that art. VI of the master deed, entitled "DESCRIPTION OF THE COMMON AREAS AND FACILITIES," provided, in relevant part:

"The COMMON ELEMENTS of the CONDOMINIUM consist of:

"A. Until the amendment or amendments of this Master Deed creating subsequent phases, the COMMON ELEMENTS of the CONDOMINIUM shall consist of the land, with all Buildings and all improvements thereon constituting Phase I as shown on the PHASE I PLAN."

Our conclusion is not inconsistent with G. L. c. 183A, § 19, which provides, in pertinent part:

"(a) Seventy-five per cent of the unit owners, or such greater percentage as is stipulated in the by-laws, may remove all of a condominium or portion thereof from the provisions of this chapter by an instrument to that effect, duly recorded, provided that the holders of all liens upon any of the units affected consent thereto by instruments duly recorded. Upon such removal, the condominium, including all the units, or the portion thereof thus removed shall be owned in common by the unit owners and the organization of unit owners shall be dissolved, unless it is otherwise provided in the removal instrument. The undivided interest in the property owned in common held by each unit owner shall be equal to the percentage of the undivided interest of such owner in the common areas and facilities."

The declarants properly submitted less than a fee simple absolute to G. L. c. 183A. See *Kaplan* v. *Boudreaux*, 410 Mass. 435, 441 (1991); *Commercial Wharf E. Condominium Ass'n* v. *Waterfront Parking Corp., supra* at 129. Because the declarants submitted a defeasible fee to G. L. c. 183A, retaining in the master deed a separate interest in the unphased portions of the Bishops Forest land, which could vest on the occurrence of a specified condition, they were not bound by the removal provisions of § 19 as if they had submitted to G. L. c. 183A an estate of fee simple absolute. When a defeasible fee has been conveyed, the "removal" of the interest retained by the declarants will simply occur, if at all, upon the occurrence of a stated event.

We disagree with the defendants' contention that *Levy* v. *Reardon*, 43 Mass. App. Ct. 431 (1997), controls and resolves the present dispute. In that case, the declarants, in the master deed, had "reserve[d] for themselves, their heirs, successors and assigns, the right to remove from the land subject to the within Condominium the parcels known as [Lots C, D, and E]." *Id.* at 432-433 n.5. The Appeals Court recognized that "a developer may retain a property interest by excluding it from the interest subject to the condominium." *Id.* at 435, quoting *Strauss* v.

*Oyster River Condominium Trust*, 417 Mass. 442, 446 (1994). However, the court concluded that, notwithstanding the reservation in the master deed, the declarants had submitted their entire parcel of land to the provisions of G. L. c. 183A. *Id.* at 438. Consequently, the "removal" of Lots C, D, and E, in accordance with the master deed, had divided the common area of the property in violation of the statutory requirements of §§ 5 (*c*) and 19. *Id.* at 436-440. In light of our conclusion here, that the submission of a defeasible fee to G. L. c. 183A and the subsequent "removal" of the retained interest does not run afoul of §§ 5 (*c*) and 19, we expressly overrule *Levy* v. *Reardon, supra.*

*Judgment affirmed.*