Fecteau, J.
The plaintiffs, The Villas at Eagles View Condominium Trust (“The Villas”), initially filed this action against the defendants, Baltic Realty Corporation (“Baltic Realty”), requesting the court, in Count I, to award The Villas, pursuant to G.L.c. 93A, an amount necessary to bring their common areas into compliance with the zoning by-laws and subdivision regulations of the Town of Douglas; in Count II to award an amount necessary to complete the development of common areas; in Count III judgment against Baltic Realty declaring that The Villas have an unlimited right-of-way and easement to use the roadway through Eagles View Condominium (“Eagles View”). The defendants filed a counterclaim seeking declaratory relief that The Villas do not have a valid easement *681 or, in the alternative, that The Villas pay its proportionate share of all costs and expenses related to the easement. The matter is before the court on defendants’ motion for summary judgment on Count III of the plaintiffs’ complaint and on the single count against the plaintiff on defendants’ counterclaim. For the following reasons, defendants’ motion for summary judgment is DENIED as to Count III of plaintiffs’ complaint and, under the provisions of Rule 56(b) and (c), summary judgment is ordered in favor of the plaintiffs thereon; with respect to the defendants’ counterclaim, their motion for summary judgment is DENIED in part and ALLOWED in part.

BACKGROUND

In or around 1990, Baltic Realty Corporation acquired and registered a parcel of approximately 38.54 acres of land on the westerly side of Franklin Street in the town of Douglas. The entire parcel became the common land of Eagles View when that condominium was created in 1991, and is shown in the plans entitled “Plan of White Pines in Douglas, Mass.” and “Site and Floor Plans for Eagles View Condominium Phase I, Subphase 1A and 1W.” According to the master deed, Eagles View was to be developed in two phases, but only Phase I was recorded in the deed, and the land submitted to the provisions of G.L.c. 183A was the entire 38.54-acre parcel.
The exact boundaries for Phase II were not outlined in the deed, and the “Plan of White Pines in Douglas, Mass.” did not contain “phasing lines,” which would show which land was designated as Phase I and which as Phase II. At the time of the filing of the master deed, the buildings designated as part of Phase I had already been constructed. The plan differentiated the “existing buildings,” which were shaded, from the “proposed buildings,” which were not shaded. Eagles Way runs from Franklin Street, a public way, through Phase I and allows access to side streets in both Phase I and Phase II. Therefore, without an easement over the part of Eagles Way located in Phase I, occupants in Phase II would have no means of ingress or egress.
Section 16 of the master deed reserved to the declarant the right to add Phase II to the condominium by amendment. It also reserved to the declarant, should he decide not to develop Phase II, the right to remove, without the consent of the owners or their mortgagees, all or part of the land in Phase II from Eagles View. This right would remain in effect for seven years from the date of the recording of the master deed, which occurred in 1991. The master deed also stated that, should it not be amended to create Phase II or any subphase, then Phase II would be removed from the provisions in G.L.c. 183A as aforesaid. In that event, the land shown as Phase II shall have
the right and easement, in common, to use the interior ways as shown on the aforesaid “Plan of White Pines in Douglas, Mass.” leading from Franklin Street to the interior, and shall have the right and easement in common with Phase I to use said ways leading to the interior of the premises, for all purposes for which public ways are now or hereafter used in the town of Douglas. Also, the land in Phase II shall have the right and easement, in common with Phase I, to use, maintain, repair and replace, if any, the utility, cable television, water and sewer lines, conduits and pipes leading from Franklin Street to the interior of the premises.
On December 4, 1992, the declarant executed and recorded in the Worcester District Registry of Deeds the Fifth Amendment to the Master Deed of Eagles View Condominium, exercising its option to remove and withdraw Phase II, including in the amendment the right and easement in common with Phase I to use the public ways and to repair, maintain, use, and replace any utilities, cable television, sewer and water lines, conduits and pipes. The amendment was not signed by any of the 40 unit owners of Eagles View. The site plan submitted with the amendment included phase lines that delineated the exact boundary between Phase I and Phase II.
On December 14, 1994, the declarant, Baltic Realty Corporation, executed a new Master Deed creating The Villas at Eagles View Condominium to occupy 30 of the original 38.54 acres. It subsequently sold 50 individual condominium units, simultaneously creating “The Villas at Eagles View Condominium Trust” to control and manage the common areas, including the roadways and open spaces. The plaintiffs in this case admit that, at the time of the recording of the master deed, the 30-acre parcel did not conform to the zoning by-laws or subdivision regulations of the town of Douglas, since the lot did not have frontage on a public way, was not shown on an approved subdivision plan, and did not have an “approval not required” stamp.

DISCUSSION

This case involves a dispute between The Villas and the Trustees of Eagles View as to whether The Villas has a valid access easement, with utilities, over the common land of Eagles View and, if so, whether it has an obligation to pay, or contribute to the payment of, costs and expenses for the maintenance and repair of the easement. The defendants have filed a motion for summary judgment, arguing that Phase II was not lawfully removed from the common land and that, therefore, The Villas does not have a valid access easement. Should the court decide otherwise, Eagles View contends that The Villas has an obligation to pay its proportionate share of the costs of maintaining the easement.
A. DIVISION OF COMMON LAND PURSUANT TO G.L.c. 183A, §5(c)
Section 5(c) of G.L.c. 183A provides that the common area of a condominium may not be divided and that any provision to the contrary is void. G.L.c. 183A, §5(c). See also Commercial Wharf E. Condominium *682 Ass’n v. Waterfront Parking Corp., 407 Mass. 123, 129-30 (1990) (where the Supreme Judicial Court noted that the language of G.L.c. 183A, §5{c) was clear and unambiguous in prohibiting partition of common condominium land). Eagles View argues that by removing Phase II from the common condominium land, Baltic violated G.L.c. 183A, §§5(c) and 19. It claims that if the land was not lawfully removed, and was indeed common land with one owner, no easement can be created, since “[s]o long as there was a common ownership of the two parcels there could be no easement in favor of one lot operating as a burden on the other.” Goldstein v. Beal, 317 Mass. 750, 754 (1945). The Villas, on the other hand, argues that the removal of Phase II was lawful since it was contemplated and provided for in the master deed.
The defendant’s position fails in light of the Supreme Judicial Court’s decision in Queler v. Skowron, 438 Mass. 304 (2002). In that case, the Court held that a declarant can lawfully submit a defeasible fee to G.L.c. 183A. Id. at 312. The first declarant in Queler had created a condominium of about 70.5 acres that it intended to develop in several phases governed by G.L.c. 183A. Id. at 306. The master deed provided that if declarant had not completed all the phases by the termination date (which was the first of either a defined date, seven years after the deed was executed, or the time when the grantor filed an amendment expressly releasing the right to add phases) the title of the undeveloped land would revest in declarant or its successors or assigns and that this land would be removed from the provisions of G.L.c. 183A. Id. When there remained but two lots that had not yet been phased in, the declarant recorded an instrument specifically releasing its right to add any additional phases, stating that the two lots were removed from the requirements of G.L.c. 183A. Id. This first declarant then conveyed the lots to the second declarant, who created another condominium on the revested land. Id. at 308.
In that case, a dispute eventually arose over the cost-sharing provisions of a cross-easement provision. Id. The owners of the first condominium challenged the viability of the second condominium, and the trustees of the latter brought action to quiet title. Id. at 309. The defendants, similar to the position of the defendants in the case at bar, argued that the removal of the land violated the prohibition against the partition of common land, citing G.L.c. 183A, §5(c). The Supreme Judicial Court noted that under common law, land could be conveyed as either a fee simple absolute or a defeasible fee. Id. at 310. The Court held that, by expressly providing in the master deed that any undeveloped phases were deemed removed from the provisions of c. 183A, the clear intent of the declarant was to submit to G.L.c. 183A a defeasible fee rather than a fee simple absolute. Id. at 312. In so holding, the Court noted that G.L.c. 183A is “essentially an enabling statute, setting out a framework for the development of condominiums in the Commonwealth, while providing developers and unit owners with planning flexibility," something the Court stated was “particularly important with respect to phased condominium developments where long-term financial and market conditions may be uncertain.” Id.
The Supreme Judicial Court further found the argument that the removal of undeveloped land also violated G.L.c. 183A, §19 was without merit. Id. at 315.[4] The first declarant had submitted a defeasible fee to c. 183A, rather than a fee simple absolute, retaining an interest in the land, as defined in the master deed, which revested in the declarant at the occurrence of a stated event. Id. at 313. The declarant was therefore not bound by the removal provisions of G.L.c. 183A, §19. Id.
Eagles View seeks to distinguish Queler from the case at bar and presents a two-fold argument that the removal of Phase II was illegal. First, it claims that, since there were no phase lines on the “Plan of White Pines in Douglas, Mass.,” the owners of units in Phase I could not have known what the boundary was between Phase I and Phase II and, therefore, they could not have been on notice of any limitations on the property they were acquiring. For this proposition, Eagles View relies on a footnote in Queler noting that there is substantial public interest in the ability of those who acquire property to know from an examination of the records, and particularly the master deed, what limitations if any are placed on the estate they are buying. Queler, 438 Mass. at 314 n. 16. Eagles View claims that since there were no phasing lines in the original plan, and since the master deed stated that the condominium comprised all of the land (38.54 acres), buyers of units in Phase I did not have notice of the potential limitations on the land should Phase II be removed. Therefore, according to Eagles View, there was no full disclosure of the nature and extent of the declarants’ retained interest.
This argument is without merit. Although there are no phasing lines in the original plan that accompanied the master deed, there are clear indications of what land was already developed in Phase I and what land was intended as part of Phase II. The buildings in Phase I appear shaded on the plan and labeled as “existing,” whereas the buildings in Phase II are labeled “proposed” and are not shaded. Furthermore, the master deed clearly describes the plan as a phased development plan, with the potential expressed for the declarant to remove Phase II and, should that occur, an easement over Phase I was expressly retained. Thus, in this case, as in Queler, “the unit purchasers had actual notice of the phased development plan, as well as the implications of the declarants’ failure to add all phases prior to the termination date, because it was fully disclosed in the deed.” Queler, 438 Mass. at 314.
Secondly, Eagles View argues that the removal of the Phase II land was improper due to the declarant’s *683 failure to give notice to unit owners of Phase I, pursuant to the provisions of G.L.c. 183A, §19. This argument is likewise without merit. As discussed, supra, the declarant did provide full disclosure and sufficient notice to unit purchasers. As the Supreme Judicial Court in Queler noted, allowing a declarant to remove a portion of the development is not inconsistent with the statute. Queler, 438 Mass. at 315. The Court explained that since the declarant submitted a defeasible fee rather than a fee simple absolute to G.L.c. 183A, and retained an interest in the unphased land which would vest upon the occurrence of a specific condition, they were not bound by the provisions of G.L.c. 183A, §19. “When a defeasible fee has been conveyed, the ‘removal’ of the interest retained by the declarants will simply occur, if at all, upon the occurrence of a stated event.” Id. Therefore, by duly recording the Fifth Amendment to the Master Deed, and thereby withdrawing Phase II, the removal of the interest retained by the declarant simply occurred as the stated event and, thus, the withdrawal occurred.
The declarant fully disclosed the nature and extent of the proposed Phase II, and unit purchasers were on notice of any possible limitations placed on Phase I. Furthermore, the declarant submitted a defeasible fee to G.L.c. 183A, retaining in the master deed a separate interest in any unphased portions of the land, and therefore were not bound by the provisions of G.L.c. 183A, §19. Upon the withdrawal of the land, the removal from the provisions of G.L.c. 183A of the interest retained by the declarant would simply occur. Accordingly, the removal of Phase II does not violate G.L.c. 183A, and consequently, the easement reserved in the event of a removal becomes operative and is valid.[5]
B. VIOLATION OF ZONING BY-LAWS AND SUBDIVISION REGULATIONS
Eagles View also argues that the removal of Phase II causes this land, which now comprises the land and buildings of the Villas to be in violation of applicable zoning by-laws and subdivision regulations contrary to the language of the master deed. It contends that since at the time of its removal, Phase II was in violation of local zoning and subdivision laws, its removal is unlawful. This argument fails since the wording of the master deed does not prohibit Phase II from violating local laws, and the statute of limitations has run on any such violation.
The language of Section 16 of the master deed clearly states “in the event that [the declarant] does not create Phase II or any subphase contemplated herein and the land is removed from the provisions of Chapter 183A and the Condominium Documents, so much of the land so removed, if any, will be as necessary to allow Phase I to comply with the applicable subdivision and zoning by-laws of the town of Douglas therein effect.” The plain meaning of the provision is that any removal of any part or all of the land designated as Phase II must not cause Phase I to be in violation of applicable local laws. There is no mention in the master deed of the removal prohibiting Phase II from violating these laws.
Furthermore, The Villas has admitted that Phase II violates zoning by-laws and subdivision regulations since the lot did not have frontage on a public way, was not shown on an approved subdivision plan, and did not have an “approval not required” stamp. (Plaintiffs’ Amended Complaint, ¶15.) However, neither the town nor any abutters (including the defendants, Eagles View) complained about the violations. It is reasonable to infer that the municipality views the situation as consistent with the original plan. In any event, section 7 of G.L.c. 40A provides that no action shall lie to seek abandonment, limitation, or modification of the use of any property in violation of local zoning laws after six years. G.L.c. 40A, §7; see also Garabedian v. Westland, 59 Mass.App.Ct. 427, 436-37 (2003). If any abutters were on notice that the land was in violation of zoning by-laws and failed to challenge the use of the property, after six years, any such challenge is barred by the statute of limitations. Id. at 437. Similarly, there is a one-year statute of limitations on the enforcement of subdivision regulations. G.L.c. 41, §81Y. Any violation of such subdivision regulations that is not challenged within one year in no way affects the validity of a deed. Murphy v. Donovan, 4 Mass.App.Ct. 519, 528-29 (1976). Phase II was removed twelve years and The Villas constructed ten years prior to the instant action. Accordingly, any violations of applicable zoning by-laws and subdivision regulations at those times are irrelevant and have no impact, as a matter of law, upon the validity of the easement in favor of the Villas.
C. MAINTENANCE OF EAGLE DRIVE
Finding that the removal of Phase II was lawful, and an easement in the ways of Eagles View in favor of the Villas to be valid, the responsibility for the payment of costs of maintaining and using Eagle Drive, held in common between The Villas and Eagles View remains to be determined. Eagles View contends that such costs must be shared proportionally between the dominant and servient estates. The Villas, on the other hand, argues that since Eagles View has the right to make reasonable use of the property as long as it is not inconsistent with The Villas’ use, New York Central R.R. v. Ayer, 242 Mass. 69, 74 (1922), then by exercising that right Eagles View is bound to bear the cost of the road in the same manner that it would any other of its property.
It is settled law that “when an easement of way or other property right is created, every right necessary for its enjoyment is included by implication.” Ampagoomian v. Atamian, 323 Mass. 319, 322 (1984). As a general rule, “easements impose no obligation upon those, whose lands are thus placed in servitude, to do anything.” Mt. Holyoke Realty Corp. v. Holyoke *684 Realty Corp., 292 Mass. 332, 335 (1935). However, in those and similar cases, the servient estate has not used the easement in common with the dominant estate. In the majority of cases involving easements in common, the allocation of costs of repairs and maintenance are defined in the deed. Belson v. Thayer & Associates, Inc., 32 Mass.App.Ct. 256, 261 (1992); Haar v. Greeley, 1996 WL 1185097 at * l (Mass.Super. July 10, 1996). However, in the case at bar, the deed is silent regarding payment of costs for repairs and maintenance of Eagles Way, or the proportionate payment to maintain underground utilities.
Absent agreements to the contrary, the respective privileges of both the dominant and servient estates should be governed by the standard of reasonableness. Western Massachusetts Elec. Co. v. Sambo's of Massachusetts, Inc., 8 Mass.App.Ct. 815, 825 (1979). Massachusetts statutory law regarding common areas of condominiums appears to apply that standard in stating that “all common expenses must be assessed against all units in accordance with their respective percentages of undivided interest in the common areas and facilities.” G.L.c. 183A, §6(a)(I). Other jurisdictions faced with this issue have allocated expenses for the upkeep of easements in common similarly. See Lindhorst v. Wright, 616 P.2d 450, 454-55 (1980) (“Where the easement owner is not the sole user of a private right-of-way, but uses it in common with the servient tenants, then the costs of repair and maintenance should be distributed among all users in proportions that closely approximate the usage of the parties”); Bina v. Bina, 213 Iowa 432, 438-39 (1931); Barnard v. Gaumer, 146 Colo. 409, 413 (1961) (“Absent any agreement on the question of maintenance of a private way, the burden of upkeep should be distributed between dominant and servient tenements in proportion to their relative use of the road, as nearly as such may be ascertained”).
Although Massachusetts has not addressed this issue directly, the Massachusetts Appeals Court appears to adopt the view taken by the above jurisdictions. In Shapiro v. Burton, 23 Mass.App.Ct. 327, 334 (1987), the court balanced the interests of the owners of the servient and dominant estates as holders of an easement in common. Although ihe court did not make a determination as to the allocation of the costs of repairs and maintenance of the easement in common (a staircase down to the ocean), it stated that “(ajdditional evidence is required before an appropriate judgment can be framed and may entail such matters as the cost of maintaining the existing stairway ... and how the costs should be equitably proportioned among the common easement holders.” Id. at 355 (citing with approval Bina, Barnard, and Lindhorst, supra).
In the case at bar, a reasonable balancing of the respective rights of the dominant and servient estates would indicate that the costs of repair and maintenance of Eagles Way and underground utilities should be shared between The Villas and Eagles View. Section 16 of the master deed states that the land in Phase II would have the right and easement in common with Phase I to repair, replace, maintain and use the underground utilities, strongly implying a sharing of costs. Eagles View suggests that, since the number of cars traveling on Eagles Way will vaiy, costs should be allocated based on the relative number of units in each condominium — 55% to The Villas and 45% to Eagles View. This is a determination that cannot be made as a matter of law, nor do the documents allow for a plain and undisputed allocation. As in Shapiro, additional evidence is needed to determine an equitable allocation of costs. However, the exact proportion of payment is a genuine issue of material fact that cannot be decided on summary judgment.

ORDER

It is therefore ORDERED that, on Count III of the plaintiffs’ complaint, the defendants’ motion for summary judgment be DENIED and a judgment entered in favor of the plaintiffs that declares that it has a valid easement, in common with the defendants to use the ways shown on the “Plan of White Pines in Douglas, Mass.” leading from Franklin Street to the land which constitutes the Villas of Eagles View for purposes of access and egress and for utilities. It is further ORDERED that defendants’ motion for summary judgment on their counterclaim be DENIED, in part, as to the invalidity of the easement, and ALLOWED, in part, declaring that the plaintiffs owe a proportionate sharing of costs of the easement as aforesaid. The motion is denied as to an actual determination of the share of costs that each parly shall pay, as it is a genuine issue of material fact for which summary judgment cannot be granted.

Section 19 of G.L.c. 183A provides that in order to remove a part of land from the provisions of c. 183A, seventy-five percent of the unit owners (or such greater percentage as established in the by-laws) must be in agreement.

The defendants assert one additional ground for their contention that a valid removal and the springing into operation of an easement did not occur, in that, according to the defendant’s view of the Master Deed, only upon a failure of the declarant to develop Phase II within seven years, and not by an affirmative act of withdrawal, such as was done herein by amendment to the Master Deed, can the easement spring into being. The court disagrees. Even if the master deed does not state expressly that an easement is also created upon withdrawal by amendment, as it is upon withdrawal by default of the development of Phase II, Section 16 clearly implies that the easement is to be created and the court so interprets the document as creating the easement upon withdrawal of the land of Phase II from the provisions of c. 183A, whether by amendment or default thereof.