NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1719                                    Appeals Court

LAURI UNION & another[1]  vs.  SAMUEL BLOOMBERG & others,[2]
                        trustees.[3]


No. 14-P-1719.

Norfolk.     October 19, 2015. - December 2, 2015.

Present:  Berry, Green, & Blake, JJ.


Contract, Settlement agreement.  Condominiums, Common area,
     Management of trust.  Real Property, Condominium.  Damages,
     Attorney's fees.  Practice, Civil, Attorney's fees, Trustee
     of condominium management trust.



     Civil action commenced in the Superior Court Department on
July 7, 2009.

     The case was heard by Patrick F. Brady, J., on a motion for
summary judgment, and a motion for attorney's fees and costs was
heard by him.


     Thomas O. Moriarty for the defendants.
     Arthur P. Kreiger for the plaintiffs.


_____

     [1] Stanley Rosenzweig.

     [2] Barbara Davis, William Karlyn, and Wayne Saker.

     [3] Of the Longyear at Fisher Hill Condominium Trust.

BERRY, J.  This action concerns a settlement agreement between a condominium trust, among others, and the owners of property that abuts the condominium.  The defendants, trustees of the Longyear at Fisher Hill Condominium Trust (collectively, the trust), appeal from summary judgment entered in favor of the plaintiffs, Lauri Union and Stanley Rosenzweig, whereby a Superior Court judge ruled that the settlement agreement obligated the trust to plant and to maintain a number of trees between the condominium buildings and the plaintiffs' property.[4] On appeal, the trust claims that the settlement agreement is invalid because it violates certain provisions of the condominium statute, see G. L. c. 183A, §§ 1-23, and that the attorney's fees awarded by the judge pursuant to the settlement agreement are excessive.  We affirm.

Background.  The undisputed facts relevant to this appeal are taken from the parties' joint statement of material facts, which we supplement somewhat, from the record.  In 1999, Longyear Properties, LLC (Longyear), the condominium declarant and developer, began construction of four condominium buildings on an eight-acre parcel in Brookline (town), pursuant to a

_____

[4] Also signatories to the settlement agreement were Longyear Properties, LLC; Cortland Properties, LLC; and Hayden Street, LLC.  Those entities, their two principals, Robert S. Roth and John J. Sullivan, as well as the additional entity, CCCT, Inc., either were defaulted or are bankrupt.

special permit issued by the town board of appeals (the board). CCCT, Inc. (CCCT), was established by Longyear as the initial condominium trustee, pursuant to a June 28, 1999, declaration of trust, recorded in the Norfolk County registry of deeds. Robert S. Roth and John J. Sullivan controlled both Longyear and CCCT. The plaintiffs own property across the street from two of the condominium buildings, referred to as buildings C and D.

After completion of the first two buildings in the development, Longyear began construction on building C. The plaintiffs claimed that the location of building C was closer to their property than allowed under the special permit, and they filed a request for zoning enforcement with the town's building commissioner. When their request was denied, the plaintiffs appealed to the board.

On April 22, 2004, the plaintiffs entered into a settlement agreement with Longyear and two Longyear affiliates, Cortland Properties, LLC (Cortland), and Hayden Street, LLC (Hayden), along with CCCT, as sole trustee of the trust.[5] The plaintiffs agreed to dismiss their zoning appeal, and Longyear agreed to certain restrictions affecting buildings C and D. Longyear also agreed to plant and to maintain a number of trees on the

---

[5] Roth and Sullivan were officers and directors of CCCT, and signed the settlement agreement on behalf of the trust. See note 4, supra. Roth and Sullivan also controlled Longyear, Cortland, and Hayden.

condominium property, as well as on property owned by the town and by the plaintiffs, in order "to mitigate the visual impact of Buildings C and D upon the [plaintiffs'] property."[6] The trust joined in the settlement agreement and agreed to be bound by all of its provisions, including the landscaping obligations. In particular, paragraph 27 of the settlement agreement provided as follows:

> "To the extent that the consent of [the trust] is needed to ensure that Longyear has the authority to perform all of the legal obligations set forth herein, [the trust] hereby provides such consent, and agrees to promptly execute such documents as may be necessary to effectuate such consent. Without limiting the generality of the foregoing, [the trust], agrees that it is bound by all provisions of this Agreement as the successor of Longyear, including but not limited to the restrictions on the location and height of Building D as set forth in paragraphs 1-2, the limitations on the use of Hayden Road to access Building C as set forth in paragraph 3, and the ongoing landscaping obligations set forth in paragraphs 7-16."

Paragraph 28 further states, in relevant part: "This agreement is binding upon all parties signing this agreement below and their respective heirs, successors and assigns for a period of fifty years." A memorandum of agreement, which provided notice of the settlement agreement and stated that a

---

[6] The landscaping is difficult to quantify from the plans attached to the settlement agreement, but according to the trust's brief, it consisted of fifty-one Norway spruce trees and eight arborvitae to be planted and maintained in the common areas between buildings C and D and the plaintiffs' property.

copy was available for inspection at the office of the trust, was recorded at the Norfolk County registry of deeds.

The trust notified the board of the parties' settlement and petitioned for the requisite modifications to the special permit in order to implement the terms of the settlement agreement. The plaintiffs thereafter dismissed their zoning appeal. Longyear proceeded to plant trees in front of building C, but failed to complete the landscaping called for in the settlement agreement and eventually filed for bankruptcy.

On July 7, 2009, the plaintiffs filed suit for breach of contract against Longyear, Cortland, Hayden, CCCT, and the trust. On September 9, 2009, control of the trust was turned over to trustees elected by the unit owners.[7] CCCT was removed as trustee soon after, and the plaintiffs amended their complaint to include the new trustees. Roth and Sullivan were added as third-party defendants. As the litigation proceeded, various parties filed for bankruptcy or were defaulted, see note 4, supra, leaving the trust to defend the action.

On April 18, 2013, the trust moved for summary judgment, challenging the enforceability of the settlement agreement under c. 183A. The judge denied the motion and entered summary judgment for the plaintiffs. Following dismissal of the

_____

[7] In addition to CCCT, the new trustees were Samuel Bloomberg, Barbara Davis, William Karlyn, and Wayne Saker.

remaining cross claims and counterclaims, final judgment entered, declaring that the trust was obligated to perform the landscaping obligations set out in the settlement agreement. Attorney's fees and costs, as provided in paragraph 24 of the settlement agreement, were awarded to the plaintiffs in the amount of $132,140.96.  The trust filed this appeal.

Discussion.  1.  Limits on declarant's use of trust funds. The trust maintains that requiring the trust to complete Longyear's landscaping obligation is a violation of c. 183A, § 10(j), which prohibits a declarant from using trust funds toward the initial construction, development, and marketing of the condominium.[8]  It is the trust's position that the landscaping is related to the initial construction of the condominium development, and § 10(j) prohibits the use of trust funds for that purpose.

We will assume, without deciding, that funding the landscaping required under the settlement agreement is related, in a broad sense, to the project's initial construction by virtue of the fact that by agreeing to install the landscaping,

---

[8] Section 10(j), inserted by St. 1963, c. 493, § 1, provides:  "The declarant shall not use any funds of the organization to fund expenses relating to the initial construction, development, and marketing of the project, to pay the declarant's share of common expenses, or to pay for any costs that are not directly related to the operation of the condominium."

Longyear was able to proceed unfettered with construction of buildings C and D. Even so, the plain language of c. 183A, § 10(j), does not prohibit the trust's use of trust funds to comply with its own obligations, as the statute prohibits only the declarant, here Longyear, from using those funds.[9] "The statutory language, when clear and unambiguous, must be given its ordinary meaning." Beaconsfield Towne House Condominium Trust v. Zussman, 401 Mass. 480, 483 (1988).

The plaintiffs' appeal to the board, following the building commissioner's denial of their request for zoning enforcement, involved a dispute concerning the condominium's common areas and facilities and therefore implicated the trust's rights under c. 183A, § 10(b)(4). Moreover, the trust had an obvious interest in the potential adverse effect the plaintiffs' request for zoning enforcement (if successful) could have on portions of the common areas, particularly those included as a part of building C. Section 10(b)(4), inserted by St. 1963, c. 493, § 1, provides the trust with the right and the power to "conduct litigation and to be subject to suit as to any course of action involving the common areas and facilities or arising out of the enforcement of the by-laws, administrative rules or restrictions

---

[9] The declarant is the person or entity who records a master deed that submits the property to the provisions of c. 183A. G. L. c. 183A, §§ 1 & 2.

in the master deed." Pursuant to the grant of authority under § 10(b)(4), it was well within the trust's power to join in the settlement of the plaintiffs' zoning appeal involving the condominium's common areas. "The power of trustees '[t]o conduct litigation . . . involving the common areas and facilities' includes the power to settle claims prior to or in the course of litigation." Golub v. Milpo, Inc., 402 Mass. 397, 401 (1988), quoting from c. 183A, § 10(b)(4).

Accordingly, on our reading, § 10(j) serves to preclude the declarant's use of trust funds for its own purposes in the initial phases of the project, as specified therein. Contrary to the trust's view, we are not enforcing an obligation under a settlement agreement that is otherwise forbidden by statute. The settlement agreement here specifically acknowledged the trust's role in managing the affairs and the common areas of the condominium, and § 10(j) does not prohibit the trust from settling a claim and committing trust funds to carry out its own distinct obligations under the settlement agreement.[10]

---

[10] The trust suggests that the public policy that favors settlement of litigation should not trump the legislative intent implicit in the statutory prohibition against the declarant's use of trust funds to pay for its own initial costs. Compare Scully v. Tillery, 456 Mass. 758, 771 (2010). Because we read the plain language of § 10(j) as permitting the trust to expend funds to settle a claim concerning the common areas, we see no conflict in that regard.

The trust complains that the owners of Longyear, i.e., Roth and Sullivan, also controlled CCCT, the trustee at the time of the settlement agreement's execution, as the settlement agreement was signed before the unit owners replaced CCCT as trustees. According to the trust, the individuals in control of the corporate declarant should not be permitted to take advantage of their simultaneous control of the corporate trustee to shift the burden of funding construction-related expenses to the trust, in contravention of § 10(j). Such an arrangement, in the trust's view, would lead to all manner of abuse.

We discern no danger that enforcement of the settlement agreement would encourage a declarant's misuse of trust funds, under the guise of dual roles as developer and trustee, by applying them towards initial construction in the ordinary course. The events here occurred in the context of a zoning appeal, and the trust, as a separate entity, took part in the settlement of that dispute pursuant to its role in managing the common areas. Section 10(b)(4) gives the trust the right to settle claims concerning the common areas, and nothing therein limits that right to the period after the unit owners are appointed as trustees. Indeed, the Supreme Judicial Court has observed that developer-controlled trusts are commonplace in the development and the marketing stages of condominiums and do not contravene public policy. See, e.g., Barclay v. DeVeau, 384

Mass. 676, 682-684 (1981) (declaration of condominium trust that permitted developer to appoint majority of members to board of trustees comported with public policy if limited to a reasonable time). It has been recognized as a matter of practical necessity that the developer may retain control of the condominium trust during the building and the marketing phases. See id. at 683 ("The developer and its mortgagee risk a great deal undertaking a condominium and, to protect their large investment, may need to maintain control of the project for a specific period of time").

Section 10(b)(4) places no express restraints on the authority of the initial trustee to settle claims involving the common areas, and we reject the trust's argument that the initial trustee, when controlled by the same individuals as the declarant, should not be permitted to bind subsequent trustees in settling those disputes.[11] We are mindful that the "statute

---

[11] Individuals wearing different corporate hats in the context of related entities is commonplace in business transactions, and the courts, barring unusual circumstances, generally accept the so-called "corporate fiction" of their separate legal existence. See, e.g., Gordon Chem. Co. v. Aetna Cas. & Sur. Co., 358 Mass. 632, 638 (1971) (ownership of all stock in several corporations by one person does not create single unit; "[d]ifferent corporations usually are distinct entities in law"), quoting from New England Theatres, Inc. v. Olympia Theatres, Inc., 287 Mass. 485, 493 (1934); Beaupre v. Cliff Smith & Assocs., 50 Mass. App. Ct. 480, 494 n.22 (2000) (discussing notion of corporate fiction and longstanding principle that corporation is "a single and separate legal

sets forth certain minimum requirements for the establishment of condominiums, but 'those matters that are not specifically addressed in the statute are to be worked out by the involved parties.'" Scully v. Tillery, 456 Mass. 758, 769 (2010), quoting from Queler v. Skowron, 438 Mass. 304, 312-313 (2002). See Barclay v. DeVeau, supra at 682 (c. 183A is enabling statute, and matters that are not "expressly prohibited by clear legislative mandate," may be worked out by unit owners and developers). Barring an express statutory limitation on the trustees' authority to settle claims involving the common areas, we will not invalidate the settlement agreement provisions binding the trust on the ground that the same individuals who controlled the declarant also controlled the trust at the time.[12]

We agree with the plaintiffs that the trust's remedy for any alleged breach of fiduciary duty on the part of the former trustees regarding the obligations it undertook in the settlement agreement is an action against the former trustees.

---

being"), quoting from Gardiner v. Treasurer & Recr. Gen., 225 Mass. 355, 370 (1916).

[12] We refer as well to the principle that a "statute is not to be interpreted as effecting a material change in or a repeal of the common law unless the intent to do so is clearly expressed." Queler v. Skowron, supra at 312, quoting from Pineo v. White, 320 Mass. 487, 491 (1946). Unless expressly prohibited, we will not interpret c. 183A as representing a departure from the authority CCCT would otherwise possess to bind the successor trustees to the settlement agreement obligations.

As to the plaintiffs, however, we see no basis to rule that the disputed provision of the settlement agreement is invalid due to CCCT's involvement at the time it was signed.

2. <u>Unit owner consent for improvements</u>. The trust additionally argues that the trust's power to bind the unit owners to funding common area improvements is constrained by the requirements of c. 183A, § 18. Section 18, inserted by St. 1963, c. 493, § 1, provides, to begin, that "[i]f fifty per cent or more but less than seventy-five per cent of the unit owners agree to make an improvement to the common areas and facilities, the cost of such improvement shall be borne solely by the owners so agreeing." The section goes on to provide, among other things, that seventy-five percent or more of unit owners may agree to make improvements to the common areas and assess the costs to all as a common expense, though for certain costly improvements, a unit owner can petition the Superior Court for an order directing a condominium trust to purchase his or her unit.

The trust maintains that unit owner consent is thus required, under the statute, in order to fund common area improvements such as the landscaping called for in the settlement agreement, whether the improvements are undertaken in

the ordinary course or in settling potential litigation.[13]  In the absence of such consent, the argument continues, the trust was without authority to bind the unit owners to fund the landscaping, rendering that provision of the settlement agreement ultra vires.  See, e.g., Golub v. Milpro, Inc., 402 Mass. at 401-402 (portion of settlement agreement pertaining to individual condominium unit invalid because trustees lacked authority to settle litigation that did not involve common areas and facilities).

As previously explained, the authority to settle claims regarding the common areas of the condominium rests with the trust.  "Only the trustees have the right to conduct litigation concerning 'common areas and facilities.'"  Strauss v. Oyster River Condominium Trust, 417 Mass. 442, 445 (1994) (citation omitted).  See also Sea Pines Condominium III Assn. v. Steffens, 61 Mass. App. Ct. 838, 842 (2004) ("authority to litigate matters concerning the condominium common areas in fact resides exclusively in the condominium unit owners organization").  Section 10(b)(4) does not contain language requiring unit owner consent to the trust's various efforts in settling claims that

---

[13] The parties dispute whether the landscaping called for in the settlement agreement constituted an improvement to the common areas or, instead, mere maintenance, for which unit owner consent would not be needed.  For purposes of this discussion, we again will assume, without deciding, that the landscaping here is an improvement.

may result in committing trust funds to improving the common areas. Moreover, § 10(b)(6), inserted by St. 1963, c. 493, § 1, states, at its conclusion, that the "expenses incurred in and proceeds accruing from the exercise of the aforesaid rights and powers shall be common expenses and common profits." Reading § 18 alongside the framework of § 10(b), we are not persuaded that the trust's obligations under the settlement agreement should be invalidated because of a lack of unit owner consent to fund a settlement reached by the trust in response to the plaintiffs' zoning appeal. See, e.g., Scully v. Tillery, 456 Mass. at 771 (setting aside settlement agreement between condominium trust and developer would "subvert the well-established public policy of respecting and enforcing litigation settlement agreements").

We conclude that the statutory provisions relied on by the trust pose no obstacle to enforcing the settlement agreement in this case. In light of the foregoing, we also reject the trust's argument that the plaintiffs were not entitled to specific performance, as specific performance was expressly authorized as a remedy pursuant to the settlement agreement.

3. Attorney's fees. As a final matter, the trust complains that the attorney's fees award was excessive. The settlement agreement provided that the prevailing party was entitled to its costs and reasonable attorney's fees, including

expert witness fees, in an action alleging breach of the settlement agreement. The judge awarded attorney's fees and costs to the plaintiffs in the amount of $132,140.96.

The trust argues that the judge abused his discretion by according undue weight to the amount requested by the plaintiffs. See Berman v. Linnane, 434 Mass. 301, 303 (2001). The trust maintains that the judge, instead, should have applied the multifactor analysis set out in Linthicum v. Archambault, 379 Mass. 381, 388-389 (1979). The judge's detailed memorandum indicates that he carefully reviewed plaintiffs' counsels' affidavits concerning their qualifications, rates, and itemized invoices and properly "considered those factors on which evidence was presented, as well as his experience from the trial." Berman v. Linnane, supra. See Margolies v. Hopkins, 401 Mass. 88, 93 (1987) (Though helpful, "[w]e have never required a judge to make a factor by factor analysis in findings and rulings in an attorney's fee action"). "The judge making the firsthand observation of the quality and necessary quantity of the parties' preparation and performance is uniquely situated to assess the reasonable value of those services." City Rentals, LLC v. BBC Co., 79 Mass. App. Ct. 559, 566-567 (2011). We believe the judge properly took into account the appropriate

factors in evaluating the plaintiffs' submissions and in considering his own involvement with this lengthy litigation.[14]

As to the trust's arguments concerning specific charges, the judge's explanations for allowing them were well reasoned, and his findings supported in the record. The trust's principal complaint is that the plaintiffs' attorneys "block billed" certain items, thereby grouping several tasks under a single time entry. The trust relies on Haddad v. Wal-Mart Stores, Inc. (No. 2), 455 Mass. 1024 (2010), in which block billing was described as disfavored but permissible if the work was clearly described. Id. at 1026-1027. Here, the judge referenced his many years of experience as a practicing attorney and trial judge, in addition to his firsthand experience with the case, in finding that there was nothing unreasonable about grouping a number of activities under one time entry.

The trust additionally contends that the judge overlooked several irregularities in the materials submitted, when in fact

---

[14] The plaintiffs' attorney's and expert fees originally totaled $361,078.96, but $225,000 was recovered as a result of attachment of a unit owned by the developers, which later was sold. The judge also reduced the amount requested by $2,300 for the mediator's fee, which the parties had agreed would be assessed per party, and by $1,638 for "unrelated tasks." As to the amount of the award, our observation in City Rentals, LLC v. BBC Co., supra at 568, seems apt: "While at first glance, the fees tail may appear to be wagging the damages dog, both the complexity of a case -- factual or legal -- and the intensity of the defense may drive the claimant's legal fees well beyond the level of its damages figure."

the judge discussed each of those items and explained his reasoning.  "What constitutes a reasonable fee is a question that is committed to the sound discretion of the judge," Berman v. Linnane, supra at 302-303, and it was for the judge to determine the appropriate activities to be included in the fees awarded, as well the reasonableness of time billed for who the trust characterizes as inexperienced counsel, the judge specifically finding that her time spent on the summary judgment motion was warranted and her submissions excellent.  The judge addressed each of the trust's objections in turn and adequately explained his resolution, and we are satisfied that there was no error.

                                                                             Judgment affirmed.

                                                                             Order allowing costs and attorney's fees of $132,140.96 affirmed.